# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| TERRY LOCKLEAR, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14-cv-00744-SCJ |
| v. | ) ) | Honorable Steven C. Jones |
| DOW JONES & COMPANY, INC., | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT DOW JONES & COMPANY, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

Dated: June 23, 2014

Richard H. Sinkfield
Georgia Bar No. 649100
Julia B. Stone
Georgia Bar No. 200070
ROGERS & HARDIN, LLP
2700 International Tower
229 Peachtree Street, NE
Atlanta, Georgia 30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224
rsinkfield@rh-law.com
jstone@rh-law.com

Natalie J. Spears
Anthony T. Eliseuson
Kristen C. Rodriguez
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
natalie.spears@dentons.com
anthony.eliseuson@dentons.com
kristen.rodriguez@dentons.com

*Attorneys for Defendant Dow Jones & Company, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

BACKGROUND FACTS ......................................................................3

ARGUMENT ......................................................................................8

I.   The Amended Complaint Fails Because Disclosure Of A Serial
     Number For A Machine Alone Is Not "PII" Under the VPPA. .....................8

     A.   A Roku Serial Number Identifies A Machine—Not a Person .............8

     B.   Plaintiff's Speculative, Conclusory Allegations About "After-
          The-Fact Linking" Do Not Salvage Plaintiff's Failed VPPA
          Claim. ....................................................................12

II.  The VPPA Does Not Apply Because Plaintiff Is Not A "Consumer"
     As Defined by the Act. ..................................................16

     A.   Plaintiff Is Not A "Subscriber." ....................................17

     B.   Plaintiff Also Is Not A "Renter." ...................................19

III. The Amended Complaint Does Not Allege Plaintiff Suffered Any
     Injury. ..................................................................20

CONCLUSION ..................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................17

*Clapper v. Amnesty Int'l*,
    133 S. Ct. 1138 (2013)....................................................................29

*DeKalb Cnty v. HSBC N. Am. Holdings, Inc.*,
    No. 1:12-CV-03640-SCJ, 2013 U.S. Dist. LEXIS 185976 (N.D. Ga.
    Sept. 25, 2013) ...............................................................................25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)........................................................................25

*Gonzalez v. Cent. Elec. Coop., Inc.*,
    No. 08-6236-HO, 2009 U.S. Dist. LEXIS 98104 (D. Or. Oct. 15, 2009)..........15

*Heard v. Bonneville Billing & Collections*,
    Nos. 99-4092 & 99-4100, 2000 U.S. App. LEXIS 14625 (10th Cir.
    June 26, 2000)................................................................................28

*In re Application of the United States*,
    830 F. Supp. 2d 114 (E.D. Va. 2011) ..............................................16

*In re Doubleclick Privacy Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) .............................................16

*In re Hulu Privacy Litig.*,
    No. C 11-03764, 2012 U.S. Dist. LEXIS 112916 (N.D. Cal. Aug. 10,
    2012) ....................................................................................21, 22, 23

*In re Hulu Privacy Litig.*,
    No. C 11-03764, 2013 U.S. Dist. LEXIS 179934 (N.D. Cal. Dec. 20,
    2013) ..............................................................................................28

*In re Hulu Privacy Litigation*,
  No. C 11-03764, 2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28,
  2014) .......................................................................................................passim

*Johnson v. Microsoft Corp.*,
  No. C06-0900RAJ, 2009 U.S. Dist. LEXIS 58174 (W.D. Wash. June
  23, 2009) .............................................................................................16

*Kehoe v. Fidelity Federal Bank & Trust*,
  421 F.3d 1209 (11th Cir. 2005), *cert. denied with statement at* 547
  U.S. 1051 ......................................................................................28, 29

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
  561 F.3d 112 (2d Cir. 2009) ...............................................................28

*Klimas v. Comcast Cable Communications, Inc.*,
  2003 U.S. Dist. LEXIS 27765 (E.D. Mich. July 1, 2003)............................15, 16

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..............................................19

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1982)...........................................................................25, 27, 28

*Mollett v. Netflix, Inc.*,
  No. 5:11-CV-06129, 2012 U.S. Dist. LEXIS 116497 (N.D. Cal. Aug.
  17, 2012) .............................................................................................14

*Polycarpe v. E&S Landsc. Serv.*,
  616 F.3d 1217 (11th Cir. 2010) ..........................................................21

*Pruitt v. Comcast Cable Holdings, LLC*,
  100 F. App'x 713 (10th Cir. 2004).........................................................15, 20

*Raines v. Byrd*,
  521 U.S. 811 (1997)...........................................................................26, 27

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)..............................................................................27

*Sterk v. Best Buy Stores, L.P.*,
    11 C 1894, 2012 U.S. Dist. LEXIS 150872 (N.D. Ill. Oct. 17, 2012) ...26, 27, 28

*Sterk v. Redbox Automated Retail*, *LLC*,
    No. 11 C 1729, 2013 U.S. Dist. LEXIS 116077 (N.D. Ill. Aug. 16,
    2013) ...............................................................................................25, 28

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) .............................................................14

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)......................................................................26, 27

*United States v. Frank*,
    599 F.3d 1221 (11th Cir. 2010) ......................................................21, 23

*United States v. Weiss*,
    467 F.3d 1300 (11th Cir. 2006) .........................................................28

*Viacom International Inc. v. YouTube Inc.*,
    253 F.R.D. 256 (S.D.N.Y. 2008) ......................................................14, 15

*Wilson v. Glenwood Intermountain Props., Inc.*,
    98 F.3d 590 (10th Cir. 1996) .............................................................28

## STATUTES

18 U.S.C.
    § 2710(a)(2) ......................................................................................24
    § 2710(a)(3) .................................................................................12, 13
    § 2710(a)(4) ......................................................................................20
    § 2710(b)(1) ......................................................................................18

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1)..........................................................................25

Senate Rpt. No. 100-599 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342,
    available at 1988 WL 243503...................................................8, 9, 10

## <u>INTRODUCTION</u>

The Amended Complaint against Dow Jones & Company, Inc. ("Dow Jones") fails to cure the fatal defects in Plaintiff's claim under the Video Privacy Protection Act ("VPPA"). Plaintiff's original Complaint was fraught with baseless speculation and fell woefully short of stating a VPPA claim, as Dow Jones pointed out in its initial Motion to Dismiss. Recognizing these insufficiencies, Plaintiff repled in an attempt to stave off an inevitable dismissal. That attempt utterly fails.

Plaintiff has done nothing more in the Amended Complaint than cobble together irrelevant and misleading excerpts from websites and add more speculative and conclusory allegations, none of which resuscitate her claim. Despite amending, the fundamental legal flaw with Plaintiff's VPPA claim remains precisely the same—the ***only*** information allegedly disclosed by Dow Jones to mDialog in connection with the Wall Street Journal Live Channel is an anonymous Roku machine "serial number" along with the video selected.

This is fatal for Plaintiff's claim because the VPPA—enacted in 1988 in response to the publication of Judge Robert Bork's videotape rental history in a newspaper—prohibits only the knowing disclosure of "personally identifiable information" ("PII"), which is defined as information that identifies *both* a *specific* "*person*" *and* the "specific video materials" viewed. A machine serial number,

without more, does not do that.  A machine serial number identifies a device—not a specific person.

Numerous courts have concluded that anonymous machine numbers or ID numbers alone are not "personally identifiable information," and thus are not prohibited from disclosure under the VPPA and other privacy laws.  Here, there is no allegation (nor could there be) that Dow Jones even knows the names of Roku users or that Dow Jones ever had knowledge of Ms. Locklear's name or identity before this suit was filed—let alone that Dow Jones disclosed Plaintiff's name or identity to mDialog or anyone else.  Again, all that Plaintiff alleges *is transmitted by Dow Jones* to mDialog is the anonymous Roku machine number and the video selected.  As a matter of law, that does not constitute a disclosure of PII under the VPPA.  Rather than overcoming this core defect, the Amended Complaint confirms it; and as such, Plaintiff pleads herself out of court.

Plaintiff's claim also independently fails because she is not a "consumer" under the VPPA, which is defined as a "renter, purchaser, or subscriber" of video content.  Plaintiff's initial Complaint exclusively alleged she was a "subscriber."  But as Dow Jones pointed out, Plaintiff bears none of the hallmarks of a subscriber—she does not register with Dow Jones, or establish a user profile or an ID of any kind with Dow Jones or Wall Street Journal Live—a *free* on-demand channel.  Acknowledging

this problem, Plaintiff now desperately claims in the Amended Complaint that she is also supposedly a "renter."  This allegation is equally flawed and does not save Plaintiff's claim from dismissal.

Finally, this Court lacks Article III subject matter jurisdiction over Plaintiff's claims because she has not suffered any injury in fact.  Indeed, Plaintiff does not even claim she suffered any factual injury, instead she merely alleges she has standing because her alleged statutory rights under the VPPA were violated.  That is not enough to establish standing.

## BACKGROUND FACTS

***Dow Jones and the Wall Street Journal Live Channel.***  Dow Jones is a leading international media company that operates and publishes newspapers, newswires, and magazines, and provides authoritative journalism through "its flagship newspaper, *The Wall Street Journal*" and a variety of other media, including the free, on-demand *Wall Street Journal Live Channel* on Roku (the "WSJ Channel"). ECF No. 18 at ¶¶ 1, 9-11 and Fig. 1.[1]  Roku is a third-party that sells a hardware device through which various channels, including video, news, games, and other content, can be viewed over the internet.  *Id.*  Plaintiff alleges she uses a Roku device

---

[1] As shown in Figure 1 in the Amended Complaint, the WSJ Channel includes both "on-demand" news segments and "live" streaming news.  Live streaming news is not subject to the VPPA, which only applies to "prerecorded video cassette tapes or similar audio visual materials," and not to live content.

to access video content on the WSJ Channel.  *Id.* at ¶ 38.  Plaintiff does not allege she

registered with Dow Jones or the WSJ Channel, received a WSJ Channel user ID, or

completed a customer profile of any kind with the WSJ Channel—nor could she.  *Id.*

The WSJ Channel is one of many online channels available for Roku users.  *Id.*

at ¶ 10.  The WSJ Channel provides a variety of *free* on-demand video content to

Roku users, including "Top News," "Top Featured" clips and a variety of other Dow

Jones and Wall Street Journal-related media.  *Id.* at ¶¶ 11, 13.  As is common with

free news media and programming, the video content on the WSJ Channel includes

advertising.  *Id.* at ¶¶ 11-14.

***The VPPA.***  The VPPA was enacted in 1988 in direct response to the

publication of United States Supreme Court nominee Judge Robert Bork's video

rental history in a Washington, D.C. newspaper.  Senate Rpt. No. 100-599, at 5

(1988), reprinted in 1988 U.S.C.C.A.N. 4342, available at 1988 WL 243503 ("1988

Senate Report").  The principal purpose of the VPPA was to prevent such *public*

disclosure of an identified *person's* private videotape rental information.  *Id.*

***Plaintiff's Amended Complaint.***  In response to Dow Jones's Motion to

Dismiss the original Complaint, rather than oppose that Motion, Plaintiff amended.

ECF Nos. 14-15, 18.  The Amended Complaint attempts again to allege a single

count under the VPPA.  ECF No. 18 at ¶¶ 50-61.  The Amended Complaint, like the

- 4 -

original, claims Dow Jones disclosed "personally identifying information" under the

VPPA, entitling Plaintiff and class members to $2,500 each in statutory penalties. *Id.*

The Amended Complaint, critically, contains the *same* core allegation against

Dow Jones as the original Complaint. Plaintiff alleges that whenever an online video

is selected by a Roku user from the WSJ Channel, Dow Jones transmits the Roku

serial number to mDialog, a third party, along with the user's video selection in

connection with operating the WSJ Channel. *Id.* at ¶¶ 14 and n.2, 41. The Amended

Complaint expressly confirms this is the *only* information alleged to be transmitted by

Dow Jones. *Id.* at ¶¶ 53-54 (alleging "*the Roku serial number and viewing records*"

standing alone is the supposed PII disclosed by Dow Jones) (emphasis added).

The vast bulk of the new allegations in the Amended Complaint are an exercise

in pure fiction. As with the original Complaint, Plaintiff cobbles together selective

quotations from various documents and mDialog's website, which do not mention

and have nothing to do with Dow Jones or the WSJ Channel, and do not stand for the

propositions cited by Plaintiff in many instances. For example, the Amended

Complaint refers to the promotion of certain services on mDialog's website that

Plaintiff does not even allege are at issue here (*id.* at ¶¶ 22-24), and an mDialog

patent about technology "capabilities" for "mobile phones" that has no mention of or

relation to "Roku devices". *Id.* at ¶ 25 (quoting a patent regarding *mobile devices* that

use *GPS location information*).  Plaintiff also cites an EFF article she claims supports the notion that "developers" of Roku software "rely on the device's serial number to identify and track individual users"; however, the cited article contains *no* mention of the Roku device, and says nothing about Dow Jones, the WSJ Channel or mDialog. ECF No. 18 at ¶ 20, n.4.[2]  Similarly, the Amended Complaint references generic language in the Roku Privacy Policy that indicates Roku may share certain information with third parties without users' consent; however, the Policy cited does not state such information includes identifying information and Plaintiff does not allege that Roku has in fact disclosed information identifying her to mDialog.  *Id.* at ¶ 27 and n.9.

Critically, the Amended Complaint—just like the original Complaint—does not allege Dow Jones discloses anything to mDialog (or anyone else) other than a Roku serial number along with the videos viewed—and nothing that "identifies" Plaintiff or any *person*.  For example, Plaintiff does not allege any identifying information is transmitted by Dow Jones to mDialog—*e.g.*, a name, photo, or any other information that would identify a specific person.  And just like the original

---

[2] Plaintiff also takes Roku's Privacy Policy out of context; it merely discusses what the Roku device number means *to Roku itself*.  *See* ECF No. 18 at ¶ 18, n.3, citing *www.roku.com/about/privacy* (explaining *Roku* itself has the potential ability to link Roku users to Roku serial numbers: "In some instances, serial numbers are associated with personally identifiable information, and *we* can often tell from the serial number at what store and location you purchased your Roku Device.") (emphasis added)).

Complaint, there is no allegation in the Amended Complaint that Dow Jones itself even knows who any Roku user is or has information that would link the name of any person (much less Plaintiff Locklear) with a *Roku* serial number.

Rather, based on the various excerpts strewn together in the Amended Complaint, Plaintiff, once again as with the original Complaint, merely speculates and vaguely alleges that mDialog could somehow, using other *unidentified* information it supposedly has from *unknown* and *unidentified* sources, identify Roku users after-the-fact and associate the Roku serial number with some kind of a purported profile in mDialog's databases.  *Id.* at ¶¶ 27, 41.  At one point, Plaintiff also boldly alleges in conclusory fashion (unsupported by any other allegation) that mDialog somehow "was able to identify Locklear and attribute her video records to an individualized profile in its databases."  *Id.* at ¶ 41.

But importantly, this allegation (as unsupported and baseless as it is), even when taken as true, does not change the fact that the ***only*** information the Amended Complaint alleges was sent ***by Dow Jones*** to mDialog is the Roku machine serial number with the video selected.  *Id.* at ¶¶ 41, 53.  That remains the sole purported VPPA disclosure alleged against Dow Jones in the Amended Complaint.  And for the same reasons as before, Plaintiff's claim against Dow Jones fails as a matter of law.

## ARGUMENT

**I.    The Amended Complaint Fails Because Disclosure Of A Serial Number For A Machine Alone Is Not "PII" Under the VPPA.**

**A.    A Roku Serial Number Identifies A Machine—Not a Person.**

The VPPA prohibits "knowingly" disclosing "personally identifiable information" or "PII."  The VPPA defines PII as a term that "includes information which identifies *a person* as having requested or obtained *specific video materials or services* from a video tape service provider."  18 U.S.C. § 2710(a)(3) (emphasis added).  To constitute PII, the disclosed information must *both* identify (1) a particular identifiable "person" *and* (2) the "specific video" that was requested or obtained.  *Id.*  The Senate Report to the VPPA emphasizes that the definition of PII was intended to cover information that "identifies a *particular person* as having engaged in a *specific transaction* with a video tape service provider . . ." and that the VPPA "*does not restrict* the disclosure of information other than personally identifiable information."  1988 Senate Report at 12 (emphasis added).

Here, Plaintiff does not allege there was *any* disclosure by Dow Jones of her name or any other personal information that would identify her—or any specific person.  Again, Plaintiff's sole allegation is that Dow Jones disclosed the video content requested and a serial number associated with a Roku "machine."  *E.g.*, ECF No. 18 at ¶¶ 14, 41.  Plaintiff expressly alleges that "the information disclosed by the

WSJ—the combination of the *Roku serial number* and viewing records—constitutes 'personally identifiable information.'" *Id.* at ¶ 54 (emphasis added).

But the VPPA is clear that the disclosure must identify a specific "person". And a machine serial number alone does not do that. Indeed, this exact legal principle—well-settled in various privacy cases including under the VPPA—was recently re-confirmed in *In re Hulu Privacy Litigation*, No. C 11-03764, 2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014). The court in *Hulu* expressly held that the disclosure of "a unique identifier—without more" does not violate the VPPA because the VPPA applies only to disclosures that "identify a specific person and tie that person to video content that the person watched." *Id*. at *22, *38.

The court in *Hulu*, therefore, specifically found that Hulu did not violate the VPPA by disclosing a unique Hulu User ID number with the video watched by the user to a third-party analytics company, comScore, even if the ID number "hypothetically could have been linked [by comScore] to video watching" of a specific person. *Id.* at *5. As the Hulu court recently reiterated, "the disclosure of anonymous information [is] not the linking of a specific, identified person to his video watching habits that would violate the VPPA." *Hulu*, 2014 U.S. Dist. LEXIS 83661, at *70 (N.D. Cal. June 17, 2014). The *Hulu* holding, applied here, is dispositive of Plaintiff's claim. The Amended Complaint does not allege Dow Jones

transmitted anything to mDialog other than the anonymous Roku machine serial number and the video requested from the machine.[3]

Moreover, the *Hulu* court's conclusion is in accord with other courts, which have held in the context of the VPPA and other similar privacy statutes that information identifying a device or anonymized ID alone does not identify a "person" and without more is not *personally* identifiable information.  In *Viacom International Inc. v. YouTube Inc*., 253 F.R.D. 256, 262 (S.D.N.Y. 2008), the plaintiff moved to compel discovery of  YouTube users' "login IDs" and "IP addresses" in connection with their video viewing selections to show the number of users watching videos on the website that allegedly infringed the copyrights.  The court held that the VPPA did not bar disclosure of this information because, based on the parties' admissions, the Login ID was an anonymous pseudonym users create that "cannot identify specific individuals," and similarly the IP address alone could not identify a person.  *Id.*[4]

---

[3] Whether the Complaint adequately alleges that "PII" is disclosed, or that Plaintiff is a "consumer," is a question of law appropriate for resolution on a motion to dismiss. *E.g.*, *Mollett v. Netflix, Inc.,* No. 5:11-CV-06129, 2012 U.S. Dist. LEXIS 116497, *13 (N.D. Cal. Aug. 17, 2012) (dismissing VPPA claim because no disclosure was alleged as a matter of law); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (reviewing motion to dismiss VPPA claim on interlocutory appeal because the statutory interpretation question was a question of pure law).

[4] Conversely, courts have held that if only the "person" and not the specific "video materials" viewed were disclosed, there is no disclosure of PII under the VPPA.  *See Gonzalez v. Cent. Elec. Coop., Inc.*, No. 08-6236-HO, 2009 U.S. Dist. LEXIS 98104,

In *Pruitt v. Comcast Cable Holdings, LLC*, 100 F. App'x 713, 716-17 (10th Cir. 2004) (unpublished), the Tenth Circuit addressed a cable converter box identification code—very similar to the alleged Roku device serial number at issue here—under the Cable Act. The Cable Act was designed to protect the cable viewing information of persons who are cable subscribers. *Id.* In *Pruitt*, the Tenth Circuit held that disclosure of a "converter box code" was not "personally identifiable information" because "the converter box code—without more—provides nothing but a series of numbers. . . . [and] [w]ithout the information in the billing or management system one cannot connect the unit address with a specific customer." *Id.* [5]

Similarly, in *Klimas v. Comcast Cable Communications, Inc.*, 2003 U.S. Dist. LEXIS 27765 (E.D. Mich. July 1, 2003), Comcast moved to dismiss plaintiff's claim that it violated the Cable Act by collecting users' IP addresses. The "dispositive issue in regard to Comcast's Motion [was] whether an IP address is PII under the Cable Act." *Id.* at *8. The court held that it was not, finding that "an IP address, by itself, is not 'specific information about the subscriber.'" *Id.* at *10, *aff'd on other grounds*

---

at *33 (D. Or. Oct. 15, 2009) (no VPPA violation where records showed plaintiff had rented one of fifteen available movie titles but did not identify specific video viewed).

[5] Indeed, even if one could link a device to a registered user that still would not identify the person who requested the video content because most devices are shared, be it by several members of a household, roommates, or co-workers in an office, and thus different people would be viewing different video from the same device.

- 11 -

*by* 465 F.3d 271, 271 n.2 (6th Cir. 2006) (with Sixth Circuit noting its agreement that an IP address did not identify a person).

Not surprisingly, this same common-sense conclusion—that anonymous ID or machine serial numbers, without more, do not identify a person—also has been adopted in other privacy-related cases. *See In re Application of the United States*, 830 F. Supp. 2d 114, 120-21 (E.D. Va. 2011) ("IP address information, by itself, cannot identify a particular person. As amici point out, IP address information can identify [only] a particular personal computer," not a person); *Johnson v. Microsoft Corp.*, No. C06-0900RAJ, 2009 U.S. Dist. LEXIS 58174, at *12-13 (W.D. Wash. June 23, 2009) (holding an IP address was not "personally identifiable" information under Microsoft's End User License Agreement because "an IP address identifies a computer" rather than a person); *In re Doubleclick Privacy Litig.*, 154 F. Supp. 2d 497, 502 n.7 (S.D.N.Y. 2001) (distinguishing information that identifies a "particular person" from that which identifies "a particular computer").

Based on the Amended Complaint's allegations, this legal principle defeats Plaintiff's claim as a matter of law and compels dismissal.

**B.      Plaintiff's Speculative, Conclusory Allegations About "After-The-Fact Linking" Do Not Salvage Plaintiff's Failed VPPA Claim.**

The Amended Complaint "cuts and pastes" generic images from mDialog's website about certain services of mDialog and a handful of irrelevant or misleading

excerpts from various websites and articles, none of which make any reference whatsoever to Dow Jones or the WSJ Channel.  The most Plaintiff offers is vague speculation about what "could" happen based on generic language in the Roku Privacy Policy that indicates Roku may share certain information with third parties—but nowhere does the policy state that such information includes information which would identify a user.  ECF No. 18 at ¶ 27, n.9.  Nor does Plaintiff allege (nor could she allege) that Roku has in fact disclosed information identifying Plaintiff to mDialog.  Instead, based on these irrelevant and misleading selections, the Amended Complaint then claims that somehow mDialog—using *unidentified* information from *unknown* sources—could, and even was able to, link the Plaintiff to an anonymous Roku serial number.  *Id.* at ¶¶ 9-35, 41.

To begin, this type of hollow, speculative and conclusory allegation in the Amended Complaint does not properly state a claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"; "a plaintiff's obligation . . . requires more than labels and conclusions").  "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged—but

has not 'show[n]'—that the pleader is entitled to relief," and it cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[6]

But moreover, none of these allegations salvage Plaintiff's failed VPPA claim. That is because even if, as alleged, mDialog somehow did separately use information obtained from other sources to link the Roku serial number to Plaintiff's identity, that does not alter the fact that the only information allegedly *transmitted by Dow Jones* in the first instance—the Roku device number and the video selected—was not PII. Plaintiff's allegations simply do not amount to a disclosure by Dow Jones of PII.

Courts have squarely rejected such post-disclosure (so-called "reverse-engineering") theories in privacy cases. Indeed, the *Hulu* court expressly rejected this very claim under the VPPA. *In re Hulu Privacy Litig.,* 2014 U.S. Dist. LEXIS 59479, at *28-29. In that case, Hulu disclosed unique Hulu ID numbers to third-party comScore along with the video viewing history. *Id.* Separately, Hulu *itself* made information specifically linking Hulu IDs to Hulu user's names *publicly* available on Hulu's website for a period of time. *Id.* The *Hulu* court ruled that even where those separate disclosures potentially could be used by comScore (or others) to later tie a specific person's video viewing history to the otherwise anonymized Hulu ID

---

[6] Notably, Plaintiff also fails to allege Dow Jones even knew mDialog supposedly could and did link Roku users' identities to a Roku serial number, which is another independent and fatal flaw with Plaintiff's claim, as the VPPA imposes liability only on a provider who "knowingly discloses" its consumers' PII. 18 U.S.C. § 2710(b)(1).

number, that was "not enough to establish a VPPA violation". *Id.* at *39-40 (rejecting alleged "comScore" disclosures as not constituting PII); *see also Hulu*, 2014 U.S. Dist. LEXIS 83661, at *12-14 (in separate decision, court reiterated that plaintiffs' comScore claims failed as a matter of law notwithstanding that Hulu disclosed the "key" to comScore that would allow it "to locat[e] users' associated profiles that revealed their names" and would allow comScore to "connect all information" regarding what videos that person had viewed).[7]

Similarly, in *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1021-25 (N.D. Cal. 2012), the court dismissed the plaintiff's common law privacy claims *with prejudice* because "allegations that third parties can *potentially* associate LinkedIn identification numbers with information obtained from cookies and can de-anonymize a user's identity and browser history are speculative . . . ." *See also Pruitt*, 100 F. App'x at 716-17 (disclosure of converter box code identification was

---

[7] In contrast, the *Hulu* court distinguished the "comScore disclosures" from the other alleged disclosures by Hulu involving Facebook because Hulu made the "Facebook disclosures" to Facebook *itself* and included the video content viewed plus the user's *Facebook* ID, which the court viewed as similar to providing a name to Facebook given that Facebook's own ID number identifies a particular person to Facebook. The court reasoned that in that specific context, the disclosure of the Facebook ID *to Facebook itself* could be functionally equivalent to disclosure of the person's name *to Facebook*. 2014 U.S. Dist. LEXIS 59479 at *42-47. Nothing remotely similar is alleged here.

not PII without more, even though Comcast had the ability to link to the specific customer by using its own accounting and billing records).

As a matter of law, Plaintiff cannot evade the well-settled principle that disclosure of a machine serial number, without more, is not PII under the VPPA.  For this fundamental reason, the Amended Complaint, notwithstanding Plaintiff's concocted allegations, simply fails to state a valid claim against Dow Jones under the VPPA and should be dismissed with prejudice.

## II.   The VPPA Does Not Apply Because Plaintiff Is Not A "Consumer" As Defined by the Act.

While the failure to allege a disclosure of PII is fatal on its own, Plaintiff's VPPA claim also fails as a matter of law for another independent reason.  Based on her own allegations, she is not a "consumer" under the VPPA.  The VPPA defines a "consumer" as a "*renter*, purchaser, *or subscriber* of goods or services from a video tape service provider."[8]  Plaintiff originally alleged only that she was a "subscriber," ECF No. 1 at ¶ 46.  Recognizing the deficiencies of these allegations, Plaintiff now desperately adds an allegation that she is supposedly a "renter" as well.  ECF No. 18 at ¶ 52.  Plaintiff is neither.

---

[8] Under the VPPA, a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  Dow Jones reserves the right to argue that it is not a video tape service provider, but for purposes of this Motion does not raise this issue now.

**A.      Plaintiff Is Not A "Subscriber."**

The term "subscriber" is not defined by the VPPA.  Accordingly, the "ordinary

and plain meaning" of the word as it is "commonly understood" should be applied.

*United States v. Frank*, 599 F.3d 1221, 1234 (11th Cir. 2010) (quotation omitted); *see*

*also Polycarpe v. E&S Landsc. Serv.*, 616 F.3d 1217, 1223 (11th Cir. 2010) (same).

Plaintiff is not a "subscriber" of Dow Jones or WSJ Channel under *any*

plausible common understanding of that term based on the facts alleged in the

Amended Complaint.  Plaintiff has not alleged, and cannot allege, any of the

hallmarks of being a "subscriber" of Dow Jones or the WSJ Channel—a free "on-

demand" channel.  She does not allege she registered with Dow Jones.  Nor does she

allege she established any personal user ID or profile with Dow Jones or with the

WSJ Channel.  *Compare* ECF No. 18 at ¶¶ 10-14 *with In re Hulu Privacy Litig.*, No.

C 11-03764, 2012 U.S. Dist. LEXIS 112916, *22-23 (N.D. Cal. Aug. 10, 2012)

(holding the plaintiffs were Hulu "subscribers" where they "signed up for a Hulu

account, became registered users, received a Hulu ID, established Hulu profiles, and

used Hulu's video streaming services").

Again, Plaintiff does not allege Dow Jones even knows who she is or her

identity as part of her accessing WSJ Live content through the Roku Channel Store

and Roku device.  *See* ECF No. 18 at ¶¶ 10-13.  Rather, Plaintiff alleges that she uses

- 17 -

a Roku device to view video content on her television, including the WSJ Channel, and that she "must visit the Roku Channel Store" to gain access to the WSJ Channel through Roku, where she can access multiple channels and video content.  *Id.*

Beyond the fact that Plaintiff lacks any indicia of being a "subscriber," a subscriber in the commercial setting means someone who *pays* money to receive a publication regularly.[9]  Dictionary definitions confirm this ordinary meaning:

- "[S]omeone *who pays money* in order to receive something regularly, for example copies of a newspaper or magazine, or a service," MacMillan Dictionary available at http://www.macmillandictionary.com/dictionary/american/subscriber (last visited June 22, 2014) (emphasis added).

- "A person who receives a publication regularly *by paying in advance*," or "[a] person *who pays* to receive or access a service,"  Oxford Dictionaries, available at http://www.oxforddictionaries.com/us/definition/american_english/subscriber?q=subscriber (last visited June 22, 2014) (emphasis added).

- "[A] person, company, etc. that subscribes, as to a publication or concert series," or "a homeowner, apartment dweller, business, etc. that *pays a monthly charge* to be connected to a television cable service."  Dictionary.com available at http://dictionary.reference.com/ browse/subscriber (last visited June 22, 2014) (emphasis added) (emphasis added).

- "[S]omeone *who pays* to receive a newspaper or magazine regularly or to use a phone line or internet service."  Cambridge Dictionaries, available at http://dictionary.cambridge.org/us/dictionary/business-english/subscriber (last visited June 22, 2014) (emphasis added).

_____

[9] The *Hulu* court, which found that payment was not required to become a subscriber, did so only in the context of allegations that plaintiffs had signed up for a Hulu account, become registered users, received a Hulu ID, established Hulu profiles and visited hulu.com.  *In re Hulu Privacy Litig.*, 2012 U.S. Dist. LEXIS 112916 at *22-23.  Again, these elements are not alleged here (nor could they be).

These definitions further demonstrate that Plaintiff is *not* a subscriber covered by the VPPA because she also has not alleged (nor could she allege) that she paid to receive content from Dow Jones or its WSJ Channel.  *E.g.*, *Frank*, 599 F.3d at 1234 (relying on dictionary definitions to define statutory term).  Plaintiff did not pay Dow Jones; nor did she register or communicate with Dow Jones in any way that would establish a "subscriber" relationship as that term is commonly understood.

### B.    Plaintiff Also Is Not A "Renter."

In her Amended Complaint, Plaintiff now also asserts that she is a "renter" under the VPPA.  That assertion also fails.  As the *Hulu* court recognized, the term "renter" "necessarily impl[ies] payment of money."  *In re Hulu Privacy Litig.*, 2012 U.S. Dist. LEXIS 112916, at *23-24.  Indeed, the term renter is based on the word "rent," which is the consideration paid by the renter.  *See, e.g.*, Black's Law Dictionary (9th Ed. 2009) (defining rent as the "[c]onsideration paid, usu., periodically, for the use or occupancy of property").[10]  But Plaintiff does not pay for the free WSJ Channel, as her Amended Complaint admits.

---

[10] *See also http://www.merriam-webster.com/dictionary/rent* (defining rent as, *inter alia*, "the amount paid by the hirer of personal property to the owner for the use thereof"); *http://dictionary.reference.com/browse/rent?s=t* (defining rent as, *inter alia*, "a payment or series of payments made by a lessee to an owner in return for the use of machinery, equipment, etc.").

Plaintiff offers a feeble, last-ditch effort to allege she is a "renter" because Dow Jones allegedly "grants her a temporary license to access and view specific videos in exchange for her being exposed to Defendant's advertisements."  ECF No. 18 at ¶ 52. That allegation, however, just as easily applies to a viewer of free, broadcast television, which one can view freely in exchange for the periodic display of commercials which fund that free content.  But no one would ever refer to a broadcast television viewer as a "renter."  Plaintiff's allegations, which do not establish any payment of money or consideration, simply fail to establish a "renter" relationship. And thus, Plaintiff is not a "renter" within the VPPA's plain terms.[11]

## III.   The Amended Complaint Does Not Allege Plaintiff Suffered Any Injury.

Plaintiff also has failed to allege any "injury-in-fact" as required to invoke the Article III jurisdiction of this Court.  Lack of standing is a threshold basis for

---

[11] Though the Amended Complaint's fatal flaws at the pleading stage require dismissal, even if the information at issue were deemed PII and Plaintiff were covered by the VPPA, the Amended Complaint is doomed in any event.  Far from Plaintiff's wholly imaginative and unsupported allegations, Dow Jones uses mDialog for limited purposes related to the delivery of the video content requested, which fit squarely within the VPPA's express ordinary course of business exception.  18 U.S.C. § 2710(a)(2) (exception allows disclosure of PII for "debt collection activities, *order fulfillment, request processing*, and the transfer of ownership") (emphasis added); *see also* 1988 Senate Report at 9, 14 (legislative history discussing purpose of "ordinary course" exception is to allow the use of "third parties" by videotape service providers in their businesses including "computer services" and specifically for "marketing"); *Sterk v. Redbox Autom. Retail, LLC*, No. 11 C 1729, 2013 U.S. Dist. LEXIS 116077, at *11-17 (N.D. Ill. Aug. 16, 2013) (granting summary judgment to Redbox under the ordinary course exception).

dismissal under Rule 12(b)(1).  *See DeKalb Cnty v. HSBC N. Am. Holdings, Inc.*, No. 1:12-CV-03640-SCJ, 2013 U.S. Dist. LEXIS 185976, at *5 (N.D. Ga. Sept. 25, 2013) (citation omitted) (motion to dismiss challenging Article III standing arises under Rule 12(b)(1) because it questions the court's subject matter jurisdiction).

To establish Article III standing, a plaintiff bears the burden of establishing that "(1) [she] has suffered an 'injury in fact' that is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) that the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1982)).

Plaintiff does not allege she was caused any economic or bodily injury as a result of the alleged disclosures.  Instead Plaintiff alleges merely that she and the Class have had a *statutory right* violated, without any underlying factual injury. However, a technical statutory violation without a factual injury does not meet Article III standing.  *Compare* ECF No. 18 at ¶ 61 ("Plaintiff and the Class have had their statutorily defined right to privacy violated") *with Summers v. Earth Island Inst*., 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."); *Raines v. Byrd*, 521 U.S.

811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing

requirements by statutorily granting the right to sue to a plaintiff who would not

otherwise have standing.").

A mere technical violation of the VPPA without pleading an actual resulting

factual injury is insufficient to create standing.  That is the precise holding the court

reached in *Sterk v. Best Buy Stores, L.P.*, 11 C 1894, 2012 U.S. Dist. LEXIS 150872

(N.D. Ill. Oct. 17, 2012).  The *Best Buy* court held that plaintiff lacked standing to

prosecute disclosure violations under the VPPA because he did not allege any

economic or factual injury.  *Id*. at *15-20.  The *Best Buy* court expressly rejected

plaintiff's argument that a mere statutory violation under the VPPA was sufficient to

establish Article III standing.  *Id.* at *16-17 (plaintiff "must plead an injury beyond a

statutory violation to meet the standing requirement of Article III").[12]

The *Best Buy* decision is consistent with binding Supreme Court precedents

that have made clear Article III requires an injury-in-*fact* in addition to a legally

---

[12] In addition, the *Best Buy* court found that the plaintiff there, like the Plaintiff here, also lacked standing under the language of the VPPA itself, which provides a cause of action only to those who are "aggrieved" by a violation—*i.e.*, injured by the alleged disclosure.  *Best Buy,* 2012 U.S. Dist. LEXIS 150872 at *16-18.  Statutory standing is a separate issue from whether a plaintiff has Article III standing.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998).  Here, because Plaintiff Locklear has not alleged any factual injury, she also has not alleged she was "aggrieved" by the alleged disclosures as required by the VPPA.

recognized claim in order to establish standing.  *Summers*, 555 U.S. at 497 ("[T]he

requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be

removed by statute."); *Raines*, 521 U.S. at 820 n.3 (same principle).  The Supreme

Court in *Lujan* rebuffed arguments for the contrary conclusion by explaining they

were based on a misreading of older Supreme Court precedents finding standing in

cases where Congress merely enacted statutes to provide a cause of action to persons

that previously suffered an injury that lacked a legal claim.  *Lujan*, 504 U.S. at 578

(Congress may only elevate "to the status of legally cognizable injuries concrete, *de

facto* injuries that were previously inadequate in law").  In short, "Congress cannot

erase Article III's standing requirements."  *Raines*, 521 U.S. at 820 n.3.

     Notwithstanding this well-settled principle, some courts have not embraced the

injury-in-fact requirement in this context, and have held a mere statutory violation in

and of itself creates Article III standing.[13]  The Eleventh Circuit has not squarely

_____

[13]  *See In re Hulu Privacy Litig.*, No. C 11-03764, 2013 U.S. Dist. LEXIS 179934
(N.D. Cal. Dec. 20, 2013) (in a separate ruling on the issue of standing, declining to
follow the *Best Buy* court's analysis based on Ninth Circuit precedent, which held a
mere statutory violation satisfies Article III standing); *see also Sterk v. Redbox
Automated Retail, LLC*, 2013 U.S. Dist. LEXIS 116077 (N.D. Ill. Aug. 16, 2013)
(similarly concluding that no injury-in-fact is required beyond an allegation of
statutory violations).  However, the Second and Tenth Circuits have followed the
Supreme Court precedents holding that a mere statutory violation without an
underlying factual injury is insufficient to establish Article III standing.  *See Kendall
v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009) ("Kendall
cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or

confronted this specific issue of whether a mere statutory violation alone creates Article III standing, but has discussed the older Supreme court cases distinguished by *Lujan*, without acknowledging the discussion in *Lujan*. *See United States v. Weiss*, 467 F.3d 1300, 1311 (11th Cir. 2006) (noting these older cases in dicta in holding that appellant lacked standing because it lacked a stake in the mortgage at issue).[14]

Most recently, the Supreme Court has reiterated the importance of the injury-in-fact requirement to Article III. *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138 (2013) (holding, *inter alia*, that mere hypothetical threat of future harm was insufficient to establish an injury). Thus, even if Plaintiff could state a claim that she was a "consumer" whose PII had been disclosed, the Complaint's speculation about theoretical, but unidentified and unknown, potential future uses of that information by mDialog (or others) fails to support an injury-in-fact. For this additional reason, Plaintiff has not alleged any factual injury. Thus, Plaintiff simply lacks standing.

a deprivation of her entitlement to that fiduciary duty, in and of themselves constitute an injury-in-fact sufficient for constitutional standing."); *see also Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590 (10th Cir. 1996); *Heard v. Bonneville Billing & Collections*, Nos. 99-4092 & 99-4100, 2000 U.S. App. LEXIS 14625 (10th Cir. June 26, 2000).

[14] The Eleventh Circuit's decision in *Kehoe v. Fidelity Federal Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005), *cert. denied with statement at* 547 U.S. 1051 (Scalia, J. with Alito, J. concurring), addressed the Driver's Privacy Protection Act, which unlike the VPPA, lacks an "aggrieved" requirement. In addition, *Kehoe* never addressed the threshold issue of Article III standing, resolving instead a statutory damages question. *Id.*

## **CONCLUSION**

For all the foregoing reasons, Defendant Dow Jones & Company, Inc. respectfully requests that this Court dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction or, alternatively, dismiss the Amended Complaint with prejudice for failure to state a claim under the VPPA as a matter of law.

Dated: June 23, 2014                    Respectfully submitted by,

/s/ Richard H. Sinkfield

Richard H. Sinkfield              Natalie J. Spears
Georgia Bar No. 649100            Anthony T. Eliseuson
Julia B. Stone                    Kristen C. Rodriguez
Georgia Bar No. 200070            DENTONS US LLP
ROGERS & HARDIN, LLP              233 South Wacker Drive
2700 International Tower          Suite 7800
229 Peachtree Street, NE          Chicago, Illinois 60606
Atlanta, Georgia 30303            Telephone: (312) 876-8000
Telephone: (404) 522-4700         Facsimile: (312) 876-7934
Facsimile: (404) 525-2224         natalie.spears@dentons.com
rsinkfield@rh-law.com             anthony.eliseuson@dentons.com
jstone@rh-law.com                 kristen.rodriguez@dentons.com

*Attorneys for Defendant Dow Jones & Company, Inc.*

## CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7.1(D), I hereby certify that the foregoing Memorandum in Support of Dow Jones & Company, Inc.'s Motion to Dismiss First Amended Complaint has been prepared in conformity with Local Rule 5.1.  This brief was prepared with Times New Roman 14 point type.

Dated: June 23, 2014

<div style="margin-left: 50%">

/s/ Richard H. Sinkfield
Richard H. Sinkfield
Georgia Bar No. 649100
*Counsel for Defendant*
*Dow Jones & Company, Inc.*

</div>

ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
Telephone:  404-522-4700
Facsimile:   404-525-2224

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TERRY LOCKLEAR, individually and        )
on behalf of all others similarly situated,  )
                                         )
     Plaintiff,                          )
                                         )   CIVIL ACTION
v.                                       )   FILE NO. 1:14-CV-00744-SCJ
                                         )
DOW JONES & COMPANY, INC., a             )
Delaware corporation d/b/a WALL          )
STREET JOURNAL LIVE                      )
                                         )
     Defendant.                          )

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2014, I electronically filed the foregoing

Memorandum in Support of Dow Jones & Company, Inc.'s Motion to Dismiss First

Amended Complaint with the Clerk of the Court using the CM/ECF system, which

will send a notice of electronic filing to the following counsel of record:

     Jennifer Auer Jordan
     THE JORDAN FIRM, LLC
     1447 Peachtree Street, N.E., Suite 880
     Atlanta, GA 40409
     jennifer@thejordanfirm.com

     Jay Edelson
     Rafey S. Balabanian
     James Dominick Larry
     Benjamin H. Richman
     EDELSON P.C.

350 North LaSalle Drive
Chicago, IL 60654
jedelson@edelson.com
rbalabanian@edelson.com
nlarry@edelson.com
brichman@edelson.com

/s/ Richard H. Sinkfield
Richard H. Sinkfield
Georgia Bar No. 649100
*Counsel for Defendant*
*Dow Jones & Company, Inc.*

ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
Telephone:  404-522-4700
Facsimile:   404-525-2224

2