# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| TERRY LOCKLEAR, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14-cv-00744-SCJ |
| v. | ) ) | Honorable Steven C. Jones |
| DOW JONES & COMPANY, INC., | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT DOW JONES & COMPANY, INC.'S
## REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

Dated: August 11, 2014

Richard H. Sinkfield
Georgia Bar No. 649100
Julia B. Stone
Georgia Bar No. 200070
ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree Street, NE
Atlanta, Georgia 30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224
rsinkfield@rh-law.com
jstone@rh-law.com

Natalie J. Spears (*admitted pro hac vice*)
Anthony T. Eliseuson (*admitted pro hac vice*)
Kristen C. Rodriguez (*admitted pro hac vice*)
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
natalie.spears@dentons.com
anthony.eliseuson@dentons.com
kristen.rodriguez@dentons.com

*Attorneys for Defendant Dow Jones & Company, Inc.*

## TABLE OF CONTENTS

INTRODUCTION..................................................................................1

ARGUMENT .......................................................................................3

    I.    Plaintiff Fails To Overcome The Amended Complaint's
    Fundamental Flaw—The Lack Of *Any* Allegation That Dow
    Jones Itself Disclosed PII. ....................................................3

        A.    An Anonymous Machine Number Alone is Not PII
        Under the VPPA, As The Courts in *Hulu* and
        *Nickelodeon* Have Reaffirmed. ...................................6

        B.    Plaintiff's Reliance on Allegations About mDialog's
        Alleged "After-The-Fact" Linking Does Not Save Her
        Claim As a Matter of Law. .........................................7

        C.    Plaintiff's Attempts to Distinguish Other Cases Rejecting
        Device-Number Disclosure Claims Are Similarly
        Unpersuasive. ...........................................................11

    II.    Plaintiff Cannot Stretch The Meaning Of "Subscriber" Or
    "Renter" To Fit Her Unregistered Use Of The Free WSJ
    Channel...................................................................................14

        A.    Plaintiff Is Not A "Subscriber"..................................14

        B.    Plaintiff Is Not A "Renter". .......................................17

    III.    Plaintiff Confirms She Suffered No Independent Injury-In-Fact. ......18

CONCLUSION..................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................3, 4

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) ...............................................................................19

*Fair Housing Council v. Main Line Times*,
   141 F.3d 439 (3d Cir. 1998) ................................................................................19

*Gladstone Realtors v. Vill. of Bellwood*,
   441 U.S. 91 (1979)..........................................................................................18, 20

*Heard v. Bonneville Billing & Collections*,
   2000 U.S. App. LEXIS 14625 (10th Cir. June 26, 2000)....................................19

*In re Hulu Privacy Litig.*,
   2012 U.S. Dist. LEXIS 112916 (N.D. Cal. Aug. 10, 2012) ..................15, 16, 17

*In re Hulu Privacy Litig.*,
   2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014)..........................*passim*

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
   561 F.3d 112 (2d Cir. 2009) ................................................................................19

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012)..........................................................13, 14

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1982)........................................................................................18, 20

*In re Nickelodeon Consumer Privacy Litig.*,
   2014 U.S. Dist. LEXIS 91286 (D.N.J. July 2, 2014) .................................*passim*

*Pruitt v. Comcast Cable Holdings*,
  100 F. App'x 713 (10th Cir. 2004) .....................................................................13

*Raines v. Byrd*,
  521 U.S. 811 (1997)................................................................................18, 20

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)................................................................................19, 20

*United States v. Frank*,
  599 F.3d 1221 (11th Cir. 2010) .................................................................14, 17

*United States v. Weiss*,
  467 F.3d 1300 (11th Cir. 2006) .........................................................................20

*Viacom International v. YouTube Inc.*,
  253 F.R.D. 256 (S.D.N.Y. 2008) .......................................................................12

*Wilson v. Glenwood Intermountain Props., Inc.*,
  98 F.3d 590 (10th Cir. 1996) ............................................................................19

**Statutes**

18 U.S.C. § 2710 ...............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................3, 6

http://www.encyclopedia.com/topic/subscribe.aspx ..............................................14

http://www.findmewords.com/definition-of-subscribing.html................................14

http://www.oxforddictionaries.com/definition/english/arrange?q=arrange ............16

http://www.oxforddictionaries.com/definition/english/subscribe ..........................14

## INTRODUCTION

An anonymous machine number does not identify a person—an actual, specific human being—and, without more, is not "personally identifiable information" ("PII") under the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), as a matter of law.  Yet, as Plaintiff's Response confirms, that is all Plaintiff alleges Defendant *Dow Jones* disclosed to its vendor, mDialog—an anonymous ID number associated with a Roku device, plus the WSJ Live video selected.  This is fatal to her claim.

 Indeed, shortly after Dow Jones filed this Motion, a case that is precisely on point was decided, granting defendant's motion to dismiss on the very same grounds.  In *In re Nickelodeon Consumer Privacy Litig.,* 2014 U.S. Dist. LEXIS 91286 (D.N.J. July 2, 2014), the court held that Viacom did not violate the VPPA by disclosing "unique device IDs" and other anonymous information to Google, explaining:

> [T]here is simply nothing on the face of the [VPPA] or in its legislative history to indicate that "personally identifiable information" ["PII"] includes the types of information – anonymous user IDs, a child's gender and age, and information about the computer used to access Viacom's websites – allegedly collected and disclosed by Viacom.

*Id.* at *34.  Rather, to violate the VPPA, the disclosure "must, *without more, itself* link an actual person to actual video materials."  *Id.* at *37 (emphasis added).

The *Nickelodeon* ruling is another nail in the coffin for Plaintiff's claim here following the earlier *Hulu* decision, which also held that disclosure of a "unique

identifier - without more" does not violate the VPPA.  *In re Hulu Privacy Litig.*, 2014 U.S. Dist. LEXIS 59479, at *38 (N.D. Cal. Apr. 28, 2014).  *Nickelodeon* and *Hulu* are further supported by numerous holdings of other courts in privacy cases, concluding that anonymous machine and numeric identifiers alone do not identify an actual person.  Plaintiff fails to persuasively distinguish any of these rulings.

Instead, Plaintiff tries to overcome this deficiency by alleging *mDialog*—not Dow Jones—supposedly gathers other information from *other sources* to allegedly decode a Roku device number and use it to identify Plaintiff.  Plaintiff's Response ("Resp."), ECF No. 24-1 at 9-10.  But this allegation—even assuming it is true, which it isn't—is legally insufficient to state a claim, as both *Nickelodeon* and *Hulu* have held such "after-the-fact" linking by others from information gathered elsewhere does not violate the VPPA.  To violate the VPPA, the alleged *disclosure by Dow Jones* must itself identify a specific person.  The Amended Complaint fails that test.

Beyond this fundamental legal defect, Plaintiff's Response also does not demonstrate she is a "consumer" as defined under the VPPA.  Plaintiff's arguments that she is a "subscriber" or a "renter" of a free on-demand news channel are wholly inconsistent with the plain meaning of those terms, and even her own authorities.

Finally, Plaintiff concedes her only "injury" is an allegedly legal one.  Given Plaintiff's failure to allege a factual injury, she lacks standing to assert a claim here.

## ARGUMENT

### I.   Plaintiff Fails To Overcome The Amended Complaint's Fundamental Flaw—The Lack Of *Any* Allegation That Dow Jones Itself Disclosed PII.

Plaintiff's Response to Dow Jones's Motion to Dismiss confirms the Amended Complaint's failure on several levels.  To begin, in Plaintiff's quest to state a VPPA claim, her Response relies on the conclusory allegation in her Amended Complaint that mDialog somehow "was able" to link the anonymous Roku device number disclosed by Dow Jones to identify Plaintiff, by using *other unidentified* information from *unidentified* sources *other than* Dow Jones.  Resp. at 9-10.  But even if that conclusory allegation, which is totally devoid of factual support, were true, the mere fact that the recipient of otherwise anonymous information is later able to decipher it based on information from other sources does not make the *disclosure itself* PII under the VPPA, as *Nickelodeon* and *Hulu* both confirm.

Further, not only are Plaintiff's claims about mDialog *legally irrelevant*, they are inadequately pled as well and should be rejected under the controlling pleading standard for Rule 12.  To survive a motion to dismiss, the allegations must go beyond a "speculative level" and amount to "more than labels and conclusions".  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although well-pled factual allegations are taken as true, "legal conclusion[s] couched as . . . factual allegation[s] . . . are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

- 3 -

Here, Plaintiff tries to evade the requirements of *Iqbal* and *Twombly* by claiming that she need not plead facts (Resp. at 5), and that she plausibly alleges a disclosure of PII based on her generic statements about the "nature of mDialog's business."  Resp. at 8, n.2, and at 12, n.4.  Plaintiff is simply wrong.

Indeed, in *Nickelodeon*, the court followed *Iqbal* in refusing to consider the plaintiff's very similar conclusory allegation there that Google, a third party analytics provider allegedly in the business of amassing information, was "able to identify specific individuals" by connecting anonymous online information from Viacom with other information.  *Nickelodeon*, at *10 n.3 (rejecting statements as "entirely conclusory" and supported by "no facts . . . which indicate when or how either Defendant linked the online information it collected with extra-digital information about the Plaintiffs").  This Court should do the same here and disregard such allegations.

Plaintiff's conclusory allegations are not supported by a single factual allegation that plausibly supports the assertion that mDialog could use an anonymous Roku device number to identify users, let alone that mDialog *did in fact* identify Plaintiff.  Rather, Plaintiff's Response is fraught with citations to the Amended Complaint that do not support her bald assertions, and, in numerous instances, have *nothing* to do with Dow Jones, the WSJ Channel, mDialog, or even Plaintiff.

For example, Plaintiff sums up her PII argument stating that "the information disclosed by Dow Jones . . . is identifying when disclosed to mDialog," for which Plaintiff cites Paragraph 20 of the Amended Complaint.  Resp. at 19 (citing Am. Compl. at ¶ 20).  But Paragraph 20 does not support that conclusion at all.  *See* ECF No. 18 (Am. Compl.) at ¶ 20 (alleging in conclusory fashion, without reference to mDialog, that "developers of software for the Roku rely on the device's serial number to identify and track individual users").  Moreover, the article cited in support of Paragraph 20 itself remarkably contains *no mention of the Roku device* and says *nothing* about Dow Jones, the WSJ Channel, or mDialog.  *Id.* at ¶ 20, n.4.[1]  Like Plaintiff's other random and generic statements cobbled together from mDialog's website about mDialog's business and services, *none of which mention Dow Jones or the WSJ Channel,* such hollow allegations do not save Plaintiff's claim.[2]

In short, having amended once already and twice pled herself out of court with the fatal admission that Dow Jones itself discloses only an anonymous Roku device number, the Amended Complaint should be dismissed with prejudice.

---

[1] Similarly, elsewhere Plaintiff's Response cites the Amended Complaint's reference to "mobile device" patents that have nothing to do with Roku devices, and to Roku's Privacy Policy, which contains no support for the claim that Roku shares names of users or any other personal information with mDialog.  *See* Resp. at 9-10 (citing Am. Compl. at ¶ 20 and at ¶¶ 26, 27); *see also* ECF No. 21-1 at 5-7, 12-14.

[2] *See also Nickelodeon*, at *45 n.11 (criticizing as "immaterial" random "public statements reproduced" in plaintiffs' brief attributed to defendant regarding "PII").

**A.    An Anonymous Machine Number Alone is Not PII Under the VPPA, As The Courts in *Hulu* and *Nickelodeon* Have Reaffirmed.**

An anonymous Roku device number standing alone is simply not PII under the VPPA.  In *Nickelodeon*, the plaintiffs alleged Viacom disclosed certain anonymous information to Google for analytics purposes each time a user visited a Viacom website, including a code identifying the user's gender and age, ***a unique device identifier***, the IP address of the user's computer, plus the video selected.  2014 U.S. Dist. LEXIS 91286, at *7, *38-39.  The court granted Viacom's Rule 12 motion, holding that PII, "is information that must, without more, itself link an actual person to actual video materials" and that "[c]onspicuously absent from [the statutory text and legislative history of the VPPA] is . . . any indication that PII can be anonymous information which may ***after investigation*** lead to the identification of a specific person's video viewing habits."  *Id.* at *38 (emphasis added).  The *Nickelodeon* court found this was "*fatal*" to a VPPA claim where all Viacom allegedly disclosed was anonymous information, which "***without more***" could not identify "a person".  *Id.* at *38-40 (emphasis added).

Similarly, *Hulu* held that to violate the VPPA, the "*disclosed information must identify* a specific person and *tie that person* to video content that the person watched."  *Hulu*, 2014 U.S. Dist. LEXIS 59479, at *22 (emphasis added).  The court emphasized that the disclosure of a "unique identifier – without more" does not

violate the VPPA. *Id.* at *38.[3]  Following *Hulu* and *Nickelodeon*, Plaintiff's allegation that *Dow Jones disclosed* an anonymous Roku device number to mDialog plus the video requested fails as a matter of law to state a VPPA claim because that anonymous device number, alone, does not identify an actual person.

### B.   Plaintiff's Reliance on Allegations About mDialog's Alleged "After-The-Fact" Linking Does Not Save Her Claim As a Matter of Law.

Plaintiff's Response focuses on her theory that the disclosure of an anonymous ID number by Dow Jones could violate the VPPA if the third party to which that information is disclosed, here mDialog, "uses that information to identify specific individuals" based on *other unidentified* information drawn from *other* sources. Resp. at 8.  This very argument was rejected by both *Nickelodeon* and *Hulu*.

In *Nickelodeon*, the plaintiff argued that Viacom violated the VPPA because Google was able to link the *anonymous* information disclosed by Viacom with *other* information obtained elsewhere to identify users.  *Id.* at *40-41.  The court expressly rejected that theory, explaining that "[c]ertainly, this type of information might one

---

[3] Contrary to Plaintiff's argument in her Response, the fact that the legal question presented in *Hulu* arose in the context of summary judgment for the first time, rather than based on the allegations, is a distinction without a difference, given the controlling *legal* principle decided in *Hulu*. *See* Resp. at 8 n.2.  Here, Plaintiff's allegations squarely place her claim on the losing side of the calculus under the *Hulu* rationale and, moreover, were rejected *at the motion to dismiss stage* in *Nickelodeon* based on that very legal principle articulated in *Hulu*.

day serve as the basis of personal identification ***after some effort*** on the part of the

recipient, but the same could be said for nearly any type of personal information; ***this***

***Court reads the VPPA to require a more tangible, immediate link***." *Id.* at *41

(emphasis added).  In its ruling, the *Nickelodeon* court reinforced the fundamental

legal principle decided in *Hulu* "that PII is information that must link 'a specific,

identified person and his video habits.'" *Id.* at *36 (quoting *Hulu*).  *Hulu* too rejected

claims of VPPA violations based on the same type of "after-the-fact" linking theory

in connection with the alleged disclosures by Hulu to a third party analytics company,

comScore.  2014 U.S. Dist. LEXIS 59479, at *5, *8, *13, *28-29 (holding Hulu User

IDs disclosed by Hulu to comScore were not PII, notwithstanding that Hulu

separately disclosed information on Hulu's website from which plaintiffs argued

comScore "could easily" link to user names and watch history).

　　　　Plaintiff attempts to get around the *Hulu* and *Nickelodeon* holdings by reciting

the *Hulu* court's statement that "context" could render an anonymized ID "the

equivalent of the identification of a specific person," if, for example, there were a

disclosure of "a unique identifier and a correlated look-up table."  Resp. at 8 (quoting

*Hulu*, at *35-36).  This is a red herring.  The hypothetical posed by the *Hulu* court

was where the *same* entity tries to "skirt liability" by disclosing a "look up table" in

addition to an anonymous ID.  That is ***not*** alleged here.  *Hulu*, at *35; Resp. at 8, 12.

There is no allegation in the Amended Complaint that *Dow Jones disclosed* a "look up table" to mDialog or anything of the sort.[4]

Further, the allegations in the Amended Complaint do not even rise to the level of those at issue in *Hulu*.  There, the allegation was that *Hulu disclosed* a Hulu user ID to comScore and that *Hulu itself* also provided a "watch page" on its website through which third parties like comScore "could use the Hulu ID to access the Hulu user's profile page to obtain the user's name."  *Hulu*, at *39.  Thus, the only information at issue was information *disclosed by Hulu*—and even that was insufficient to establish a violation.  Here, Plaintiff does not allege mDialog could or did identify her using only information disclosed *by Dow Jones*.  Rather, the Complaint expressly alleges mDialog had to look elsewhere for *unspecified* information from *other unidentified* sources that Plaintiff asserts somehow allowed mDialog to link her to a Roku device number.  The fact that Plaintiff does not allege *Dow Jones provided* this information is fatal to her claim.

Plaintiff also tries to suggest that "context" renders the disclosure of the anonymous Roku device number to mDialog similar to Hulu's disclosure of a

---

[4] Nor does Plaintiff even allege mDialog has a "look up table" or that Dow Jones was aware of a purported look up table, contrary to Plaintiff's suggestions in her Response, which are not even supported by the cited allegations of her Complaint. *See* Resp. at 19 (citing Am. Compl. ¶ 20).

"Facebook ID" to Facebook.  This is plainly wrong.  As the court in *Nickelodeon* emphasized in an extensive discussion, the separate "Facebook allegations" addressed in *Hulu* "differ in critical ways" and were unique to Facebook IDs "which identified the user's actual identity on Facebook."  *Id.* at *42.  The *Nickelodeon* court explained that "in a socially networked world a Facebook ID is at least arguably 'akin' to an actual name that serves *without more* to identify an actual person," unlike anonymous information about a computer, such as device ID numbers, IP addresses and browser settings, which do not identify a specific person.  *Id.* at *44 (emphasis added). Moreover, in *Hulu*, the disclosure of the Facebook ID was to Facebook itself.  *Id.*  For the same reasons expressed in *Nickelodeon,* the Roku device number here, like the disclosure of a computer's "unique device ID," is not remotely the same as the disclosure *by Hulu* of a "Facebook ID" *to Facebook* itself, and is not PII.  *Id.*

Finally, Plaintiff's anticipatory attempts to distinguish *Nickelodeon* are equally unpersuasive.  Resp. at 16-19.  Plaintiff asserts that the allegations here are different from those in *Nickelodeon* because Plaintiff alleged that mDialog "*actually* does (as a known part of its business) associate the serial number with *other information* collected from her Roku activities to identify her."  *Id.* at 18 (emphasis added).  In fact, Plaintiff's allegations in the Amended Complaint regarding the linkage are much the same as those in *Nickelodeon*.  *Compare* Am. Compl., ECF No. 18 at ¶ 41

("mDialog *was able to identify* Locklear and attribute her video records to an individualized profile") (emphasis added) *with Nickelodeon* Complaint, attached as Exhibit A hereto, at ¶ 83 ("Viacom and Google *were able to identify* specific individuals and connect online communications and data, including video viewing histories of the Plaintiffs . . . .") (emphasis added).

Again, the *Nickelodeon* court's reasoning and ruling held that regardless of whether the recipient of the information actually links the identity after-the-fact, or is only potentially able to do so, there is no VPPA claim because either way the *disclosure itself* of anonymous information, such as a unique device ID, does not identify a person.  *Nickelodeon*, at \*38-44.  Likewise, Plaintiff's claim that mDialog was able to identify her *after* receiving an anonymous Roku device ID from Dow Jones, even if true, does not save her claim.[5]  The alleged *disclosure by Dow Jones* of nothing more than a Roku device number does not identify Plaintiff and is not PII.

### C.   Plaintiff's Attempts to Distinguish Other Cases Rejecting Device-Number Disclosure Claims Are Similarly Unpersuasive.

The holdings of *Hulu* and *Nickelodeon* apply the same well-established principles reflected in the other privacy cases cited in Dow Jones's opening brief.

---

[5] As noted above, Plaintiff's Amended Complaint does not allege (and cannot allege) that Dow Jones itself disclosed information sufficient to identify Plaintiff.  Plaintiff's conclusory assertion that mDialog has, after the fact, identified Plaintiff, even if taken as true (which Dow Jones denies), still fails to state a VPPA claim as a matter of law under the holdings in *Nickelodeon* and *Hulu*.

ECF No. 21-1 at 10-12 (collecting cases).  As past courts have done, the *Nickelodeon* court directly drew the distinction between information that *identifies a device* and that which *identifies a person*.  The court noted the information allegedly disclosed by Viacom "is not even anonymized information about the Plaintiff himself; *it is anonymized information about a computer* used to access a Viacom site."  *Id.* at *39 (emphasis added).  The same can be said for an anonymous Roku device number. [6]

Plaintiff's response fails to offer any meaningful distinction of these earlier privacy cases.  Instead, she repeats the same error noted above, confusing the requirement that the *disclosure itself* must identify a person with the concept that the *recipient* might, or even does, use *other information* to "decode" the information in the disclosure.  For example, the discussion offered by Plaintiff from *Hulu* regarding *Viacom International v. YouTube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008), merely points out the different posture of that case, but does nothing to change the critical legal conclusion—that "an anonymous pseudonym . . . without more 'cannot identify specific individuals,'" and thus is not PII.  *Compare* Resp. at 13-14 (quoting *Hulu*, 2014 U.S. Dist. LEXIS 59479, at *32), *with Viacom Int'l*, 253 F.R.D. at 262.

---

[6] As the *Nickelodeon* court remarked, "[k]nowing anonymized information about a computer, and an IP address associated with that computer, will not link actual people (children or adults) to their specific video choices, any more than knowing that an Opinion was written on an HP Compaq running Windows XP located at a Philadelphia IP address will link an actual judge to a specific case."  *Id.* at *40.

Likewise, the key point in *Pruitt v. Comcast Cable Holdings*, 100 F. App'x 713 (10th Cir. 2004), was the court's conclusion that the "converter boxes contain no personally identifiable information" because "[w]ithout the information in the billing or management system one cannot connect the unit address with a specific customer." *Id.* at 716-17.  Plaintiff points to Paragraphs 14-20 of her Complaint (Resp. at 14), but rather than distinguish *Pruitt*, these allegations confirm the only alleged disclosure *by Dow Jones* is the Roku device number—and nothing *more that identifies a specific person*.  Nor do Plaintiff's allegations establish mDialog "could understand" a Roku device number, standing alone, to identify a specific person.  *Id.; Pruitt*, at 716 (a "box code–without more–provides nothing but a series of numbers").

And contrary to Plaintiff's assertion, the allegations rejected in *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), mirror those here.  In *Low*, the plaintiff alleged that "Third Parties *are able* to place a LinkedIn user's actual identity with his/her personal, Private Browsing History."  *See* Exhibit B hereto, *Low* Compl. at ¶ 20 (emphasis added).  Just as in *Low*, Plaintiff here conclusorily alleges "mDialog *was able to identify* Locklear and attribute her video records to an individualized profile," ECF No. 18 at ¶ 41 (emphasis added).  Notwithstanding such allegations, the *Low* court dismissed plaintiff's privacy claim *with prejudice* because

- 13 -

such allegations were too speculative to support a claim that LinkedIn *itself* took any action to reveal private information. *Low*, 900 F. Supp. 2d at 1025.[7]

## II.   Plaintiff Cannot Stretch The Meaning Of "Subscriber" Or "Renter" To Fit Her Unregistered Use Of The Free WSJ Channel.

Plaintiff is not a "consumer" within the meaning of the VPPA because she is plainly not a "subscriber" or a "renter."  Resp. at 19-23.  To so hold would defy common sense, dictionary definitions, and Plaintiff's own allegations.

### A.   Plaintiff Is Not A "Subscriber".

The definitions relied upon by Plaintiff all demonstrate that the *primary* and most "commonly understood" meaning of "subscribe"—the meaning used by Congress—is to "[a]rrange to receive something, typically a publication, *regularly by paying in advance*."[8]  *See United States v. Frank*, 599 F.3d 1221, 1234 (11th Cir. 2010) (the "ordinary and plain meaning" of the word as it is "commonly understood" should be applied) (quotation omitted).  *See also* ECF No. 21-1 at 18 (citing similar

---

[7] In addition, as here, the *Low* Complaint's allegations were based on nothing more than speculation and conjecture from random statements on various websites that were taken out of context and misconstrued.  *Compare* Ex. B. at ¶¶ 39-40 *with* Am. Compl., ECF No. 18 at ¶¶ 22-24.

[8] Each of the following definitions of "subscribe" is cited and relied upon by Plaintiff, *see* Resp. at 20 n.6 (http://www.oxforddictionaries.com/definition/english/subscribe (last accessed on August 10, 2014); http://www.findmewords.com/definition-of-subscribing.html (same); http://www.encyclopedia.com/topic/subscribe.aspx (same)).

authorities).  These definitions establish not only that becoming a subscriber requires payment, *see id.* at 18, but that it also requires an advanced agreement, registration, or sign-up process, which does not occur with the WSJ Channel free on-demand service.

Plaintiff ignores the primary definitions in her own citations as well as those cited by Dow Jones.  Instead, Plaintiff cites secondary definitions, but even those definitions demonstrate that Plaintiff is not a subscriber.  Her definitions are, at most, consistent with the *Hulu* court's construction of the term (in its earlier ruling), in which a person "[a]rrange[s] for access to an electronic mailing list or online service," by "subscrib[ing] to the service" (Resp. at 20 n.6)—namely, plaintiffs alleged that they "signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services."  *Hulu*, 2012 U.S. Dist. LEXIS 112916, *22-23 (N.D. Cal. Aug. 10, 2012).   Thus, even under Plaintiff's strained definition she is not a subscriber in the "online video service context" because she did not sign up, register, or even receive a user ID or profile with Dow Jones.

In this regard, Plaintiff misconstrues *Hulu*.  *Id.* at *23-24.  The *Hulu* court specifically held plaintiffs "pleaded more than just visiting Hulu's website" because when plaintiffs "viewed video content" on the Hulu website, Hulu "tracked" their prior data "regardless of whether they were registered and logged in" and disclosed

"'Hulu profile identifiers' linked to [plaintiffs'] 'individual Hulu profile pages that included name, location preference designated by the user as private, and Hulu username.'"  *Id.* at *23-24.  Such information (names, profile pages, user names) would exist only for users who previously signed up with Hulu.[9]  Indeed, the key word in the definitions upon which Plaintiff relies is "arrange," which means to "[r]each agreement about an action or event *in advance*,"[10] *i.e.*, by signing up or contracting for a service.  Plaintiff has not alleged that occurred here.

Instead, Plaintiff argues she is a "subscriber" of the WSJ Channel because she merely downloaded and watched videos on the WSJ Channel's free, on demand Channel on Roku.  But a "subscriber," as that term is ordinarily understood, means more than just "using" something.  Here, even setting aside that there was no payment, there also was no registration or user name or ID established with Dow

---

[9] Plaintiff asserts that Dow Jones "seems to rely" on the *Hulu* court's recitation of plaintiff's argument, instead of the court's ruling.  (Resp. at 20 n.5.)  That is not accurate.  As detailed above, the *Hulu* court's reasoning for finding plaintiffs were subscribers, even without a payment, focused on the fact that Hulu "tracked" and disclosed plaintiffs' "'individual profile pages'" including their "name, location preference . . . and Hulu username."  *Hulu*, at *23.  Hulu had this information because, as plaintiffs alleged, "they signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles."  *Id.* (reciting plaintiff's allegations).

[10] *E.g.*, http://www.oxforddictionaries.com/definition/english/arrange?q=arrange (emphasis added, last accessed on August 10, 2014).

Jones or the WSJ Live Channel.  Plaintiff does not allege that Dow Jones even knows Plaintiff's name or identity.  By her own allegations, Plaintiff has no cost, no ties to Dow Jones, no user ID, no continuing obligation and no repercussions for either using or not using the "on demand" WSJ Channel.  She simply is not a "subscriber".

**B.      Plaintiff Is Not A "Renter".**

Likewise, Plaintiff is not a "renter," a claim that appears only in her Amended Complaint after Dow Jones pointed out she was not a "subscriber," as she had alleged in the original Complaint.  Plaintiff's "renter" claim is equally doomed.  Even Plaintiff acknowledges that the term "renter" requires "consideration" as part of the bargained for contractual relationship, and the WSJ Channel is *free*.  Resp. at 22; *see also Hulu*, 2012 U.S. Dist. LEXIS 112916, at *23-24 ("the terms 'renter' and 'buyer' necessarily imply payment of money").  Instead, Plaintiff's Response argues she is a "renter" because she was "exposed to Defendant's advertisements."  Resp. at 23 (quoting Am. Compl. at ¶ 52).  However, the exact same arrangement occurs with free television.[11]  It is simply illogical to describe her as a "renter" of free television, just as it would be illogical to call her a "renter" of radio, free online music services, podcasts, and a host of other free entertainment where advertisements or some other motivation exists for providing the service.  Thus, Plaintiff is not a "renter" under any

---

[11] Contrary to Plaintiff's characterization, *see* Resp. at 23 n.9, broadcast television can be viewed on demand, or recorded and watched at any time a consumer chooses.

"plain" or "common" understanding of that term.  *Frank*, 599 F.3d at 1234.

**III.    Plaintiff Confirms She Suffered No Independent Injury-In-Fact.**

Plaintiff asserts it is "hornbook law" that a statutory violation *without any*

*factual injury* satisfies Article III.  Resp. at 24.  But that is wrong, and the cases she

cites were addressed by a more recent Supreme Court decision explaining:

> Both of the cases used by *Linda R. S.* as an illustration of that
> principle [that "the . . . injury required by Art. III may exist solely
> by virtue of 'statutes creating legal rights, the invasion of which
> creates standing'"] involved Congress' elevating to the status of
> legally cognizable injuries concrete, *de facto* injuries that were
> previously inadequate in law (namely, injury to an individual's
> personal interest in living in a racially integrated community, and
> injury to a company's interest in marketing its product free from
> competition. As we said in *Sierra Club*, "[Statutory] broadening
> [of] the categories of injury that may be alleged in support of
> standing is a different matter from abandoning the requirement that
> the party seeking review must himself have suffered an injury."
> Whether or not the principle set forth in *Warth* can be extended
> beyond that distinction, it is clear that in suits against the
> Government, at least, the concrete injury requirement must remain.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1982) (quotations and citations

omitted); *see also Gladstone Realtors v. Vill. of Bellwood,* 441 U.S. 91, 100 (1979)

("In no event . . . may Congress abrogate the Art. III minima: A plaintiff must always

have suffered a distinct and palpable injury to himself . . . that is likely to be

redressed if the requested relief is granted.") (internal quotation omitted).

This principle that Congress may *not* erase Article III's injury in fact

requirement has been repeatedly reaffirmed.  *Raines v. Byrd*, 521 U.S. 811, 820 n.3

(1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").

Plaintiff's reliance on cases from the Ninth, Seventh, and Sixth Circuit does not save her argument, as those cases embrace the minority rule—a minority rule that is subject to a pending Petition for a Writ of Certiorari[12]—and one that is incompatible with the Supreme Court cases discussed above.  Resp. at 25-27.  Other Circuits have squarely rejected the concept of standing without factual injury.  *David v. Alphin*, 704 F.3d 327, 338-39 (4th Cir. 2013) (rejecting Plaintiff's argument because such a "theory of Article III standing is a non-starter as it conflates statutory standing with constitutional standing"); *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009) (similar principle); *Fair Housing Council v. Main Line Times*, 141, F.3d 439, 443-44 (3d Cir. 1998) (similar principle); *Wilson v. Glenwood Intermountain Props., Inc*., 98 F.3d 590 (10th Cir. 1996) (similar principle); *Heard v. Bonneville Billing & Collections*, 2000 U.S. App. LEXIS 14625 (10th Cir. June 26, 2000) (similar principle).

---

[12] *See Spokeo, Inc. v. Robins*, No. 13-1339 (U.S. Sup. 2014).

In any event, Plaintiff's Amended Complaint squarely presents this purely legal question—one that Dow Jones respectfully submits should be resolved in its favor based on the above controlling authorities from the Supreme Court,[13] and one that may again be before the Supreme Court in the near future.

## CONCLUSION

For the foregoing reasons and those in its Opening Brief, Defendant Dow Jones & Company, Inc. respectfully requests that this Court dismiss Plaintiff's Amended Complaint.

Dated: August 11, 2014                    Respectfully submitted by,

/s/ Richard H. Sinkfield

| | |
|---|---|
| Richard H. Sinkfield | Natalie J. Spears |
| Julia B. Stone | Anthony T. Eliseuson |
| ROGERS & HARDIN LLP | Kristen C. Rodriguez |
| 2700 International Tower | DENTONS US LLP |
| 229 Peachtree Street, NE | 233 South Wacker Drive, Suite 7800 |
| Atlanta, Georgia 30303 | Chicago, Illinois 60606 |

*Attorneys for Defendant Dow Jones & Company, Inc.*

---

[13] The Eleventh Circuit has not squarely addressed this legal question. Plaintiff's selective quotation from *United States v. Weiss*, 467 F.3d 1300, 1311 (11th Cir. 2006), consists of the Eleventh Circuit's quote from the very same cases addressed by *Lujan*. Resp. at 30. Contrary to Plaintiff's suggestion, that language was not even that of the Eleventh Circuit much less its holding. Rather, the *holding* of *Weiss* was that the plaintiff lacked standing because it had no interest in the asset at issue. *Weiss*, 467 F.3d at 1311 (holding that appellant lacked standing because it lacked a stake in the mortgage at issue). Thus, this Court should follow the Supreme Court's controlling precedents in *Lujan*, *Gladstone*, *Raines*, and *Summers* discussed above and in Dow Jones's opening brief. ECF No. 21-1 at 22-23.

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Local Rule 7.1(D), I hereby certify that the foregoing

Memorandum in Support of Dow Jones & Company, Inc.'s Motion to Dismiss has

been prepared in conformity with Local Rule 5.1.  This brief was prepared with

Times New Roman 14 point type.

Dated: August 11, 2014

                                                    /s/ Richard H. Sinkfield
                                                    Richard H. Sinkfield
                                                    Georgia Bar No. 649100
                                                    *Counsel for Defendant*
ROGERS & HARDIN LLP                                 *Dow Jones & Company, Inc.*
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
Telephone:  404-522-4700
Facsimile:   404-525-2224

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| TERRY LOCKLEAR, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION FILE NO. 1:14-CV-00744-SCJ |
| DOW JONES & COMPANY, INC., a Delaware corporation d/b/a WALL STREET JOURNAL LIVE | ) ) ) ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2014, I electronically filed the foregoing

**DEFENDANT DOW JONES & COMPANY, INC.'S REPLY IN SUPPORT OF**

**ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of

the Court using the CM/ECF system, which will send a notice of electronic filing to

the following counsel of record:

Jennifer Auer Jordan
THE JORDAN FIRM, LLC
1447 Peachtree Street, N.E., Suite 880
Atlanta, GA 40409
jennifer@thejordanfirm.com

Jay Edelson
Rafey S. Balabanian
James Dominick Larry

Benjamin H. Richman
EDELSON P.C.
350 North LaSalle Drive
Chicago, IL 60654
jedelson@edelson.com
rbalabanian@edelson.com
nlarry@edelson.com
brichman@edelson.com

                                        /s/ Richard H. Sinkfield
                                        Richard H. Sinkfield
                                        Georgia Bar No. 649100
ROGERS & HARDIN LLP                     *Counsel for Defendant*
2700 International Tower                *Dow Jones & Company, Inc.*
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
Telephone:  404-522-4700