IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TERRY LOCKLEAR,                           )
individually and on behalf of             )
all others similarly situated,            )
                                          )
            Plaintiff,                    )
                                          )      CIVIL ACTION FILE
v.                                        )
                                          )      NO. 1:14-CV-00744-MHC
DOW JONES & COMPANY, INC.,                )
                                          )
            Defendant.                    )

## ORDER

This case arises under the Video Privacy Protection Act, 18 U.S.C. § 2710

("VPPA").  It is before the Court on Defendant's Motions to Dismiss.  [Docs. 14,

15, 21].  For the reasons stated below, Defendant's Motions to Dismiss Plaintiff's

Class Action Complaint [Docs. 14, 15] are **DENIED** as moot.  Defendant's Motion

to Dismiss Plaintiff's Amended Class Action Complaint [Doc. 21] is **GRANTED**.

### I. BACKGROUND

The following allegations are contained in Plaintiff's first amended

complaint.[1]  Defendant Dow Jones & Company, Inc. ("Dow Jones") is a Delaware

---

[1] Plaintiff's attorneys have advanced nearly identical arguments in two other cases
in this district: Ellis v. Cartoon Network, Inc., No. 1:14-CV-484-TWT, 2014 WL
5023535, at *2 (N.D. Ga. Oct. 8, 2014) (defendant's motion to dismiss granted),

corporation with its headquarters and principal place of business located in New York, New York. [Doc. 18 at ¶ 6]. Among other places, it conducts business throughout this District [id.]. Dow Jones is an international media company that publishes a variety of newspapers, newswires, and magazines [id. at ¶ 1]. It also offers media to consumers via a variety of other mediums, including the free, on-demand *Wall Street Journal Live Channel* (the "WSJ Channel") on Roku [id.]. Roku is a digital media-streaming device that delivers videos, news, games, and other content to consumers' televisions via the Internet [id. at ¶ 1 n.1]. In order to install the application called "channel" on Roku, users must visit the Roku Channel Store (Roku's proprietary online digital media platform) where they can download channels that allow them to view specific television shows or video clips on their devices [id. at ¶ 10].

Plaintiff, Terry Locklear, is a Georgia citizen. Starting November 2012, she downloaded and began using the WSJ Channel on her Roku media-streaming device to watch video clips and news stories [id. at ¶ 38]. Locklear did not consent, agree, or otherwise permit Dow Jones to disclose her personally identifiable information ("PII") to any third party analytics or advertising companies [id. at ¶ 39]. Each time Plaintiff viewed a video clip using the WSJ

and Perry v. Cable News Network, Inc., 1:14-CV-2926-ELR (N.D. Ga. Sept. 12, 2014) (defendant's motion to dismiss pending).

Channel, Dow Jones disclosed her Roku device serial number and video viewing history to mDialog, an analytics and advertising company [id. at ¶ 41]. mDialog creates user identities by relying in part on information supplied by entities such as Roku [id. at ¶¶ 16, 26, 27]. So, once equipped with the demographic data linked to a Roku serial number, mDialog, by receiving information from such other entities, can attribute video records received from Dow Jones to an actual individual [id. at ¶ 27]. mDialog was able to identify Plaintiff and attribute her video records to an individualized profile in its databases [id. at ¶ 41].

Plaintiff now brings this putative class action on behalf of herself and others, whose Roku serial numbers were disclosed to mDialog. She alleges that Roku serial number and video viewing history constitute PII under the VPPA and that disclosure of such PII violated the VPPA. Plaintiff claims that she and the putative class members are entitled to an injunction and monetary compensation.

After Dow Jones moved to dismiss Plaintiff's original complaint [Docs. 14, 15], Plaintiff amended the complaint [Doc. 18]. Dow Jones then moved to dismiss Plaintiff's first amended complaint [Doc. 21].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to

relief." Although this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (stating "[n]or does a complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancement'"). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

When considering a Rule 12(b)(6) motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)). However the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

III. DISCUSSION

A. Standing

Dow Jones asserts that Plaintiff has not suffered an independent injury-in-fact and, therefore, lacks Article III standing to sue. [Doc. 21-1 at 21]. Plaintiff contends that violation of a substantive statutorily created right suffices to establish standing. [Doc. 24-1 at 32]. Plaintiff further claims that the VPPA expressly confers a right to privacy in viewing video materials, and Dow Jones violated that right. [Id. at 25]. In addition, Plaintiff asserts that mDialog actually did personally identify her, so that her injury is actual and not speculative. [Id. at 29].

"Article III of the Constitution confines the reach of federal jurisdiction to Cases and Controversies." Palm Beach Golf Ctr.-Boca, Inc. v. Sarris, 771 F.3d 1274, 1280 (11th Cir. 2014) (citations and internal quotation marks omitted). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (citations and quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The Supreme Court has held that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." Warth v. Seldin, 422 U.S. 490, 514 (1975). Accordingly, invasion of such statutorily-created rights creates standing, even if no injury would have existed without the statute. Palm Beach Golf Ctr.-Boca, Inc., 771 F.3d at 1280.

Dow Jones is challenging only the injury element in this case. The statute at issue here provides: "Any person *aggrieved* by any act of a person in violation of this section may bring a civil action in a United States district court." 18 U.S.C. § 2710(c)(1) (emphasis added). The Supreme Court has analyzed the Federal Election Campaign Act, which included almost identical language. See Federal Election Comm'n v. Akins, 524 U.S. 11, 19 (1998) (interpreting "any party *aggrieved* by an order of the Commission dismissing a complaint filed by such party may file a petition in district court seeking review of that dismissal.") (internal punctuation marks and citation omitted) (emphasis added). There, the Court held that the word "aggrieved" indicated "congressional intent to cast the standing net broadly—beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested." Id. (citations

omitted).  Thus, in light of this authority, the Court concludes that Plaintiff has satisfied the injury element and has standing in this case.

B. The VPPA Claim

Dow Jones argues that Plaintiff is not a "consumer" of Dow Jones or WSJ Channel under the VPPA. [Doc. 21-1 at 21].  Its main argument rests on the fact that Plaintiff paid no money to watch WSJ Channel. [Id. at 22-25].  Plaintiff, however, contends that no money exchange is needed between the parties to qualify her as a "subscriber" or "renter," and therefore, is a "customer" under the VPPA.  [Doc. 24-1 at 29-31].

Only a "consumer" can bring an action under the VPPA.  See 18 U.S.C. § 2710(a)(1).  The term "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider."  Id.  However, the statute does not define the terms "renter" or "subscriber."  The Court finds that cases from this and other districts, defining these terms in the online services context, are instructive.  For example, if a plaintiff, in addition to visiting a website, pleads that he or she also viewed video content on that website, that plaintiff is a "subscriber" to a service within the meaning of the VPPA.  See Ellis v. Cartoon Network, Inc., No. 1:14-CV-484-TWT, 2014 WL 5023535, at *2 (N.D. Ga. Oct. 8, 2014);  see also In re Hulu Privacy Litigation, No. C 11-03764 LB,

2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012).  Thus, contrary to Dow Jones'

argument, no money exchange is required between a "customer" and "provider"

for Plaintiff to qualify as a "subscriber."  See In re Hulu Privacy Litigation, 2012

WL 3282960, at *8 (holding that "while the terms 'renter' and 'buyer' necessarily

imply payment of money, the term 'subscriber' does not");  see also Ellis, 2014

WL 5023535, at *2 (plaintiff is a "subscriber" where he downloaded a free mobile

application on his phone and used it to watch video clips free of charge).

Furthermore, the Hulu court held that a plaintiff does not have to log in or register

to be considered a "subscriber," where "[t]he resurrected previously-deleted

cookies allowed [customers'] data to be tracked 'regardless of whether they were

registered and logged in.'"  In re Hulu Privacy Litigation, 2012 WL 3282960, at

*8.

    The Court concludes that Plaintiff has pled sufficient facts that qualify her as

a "subscriber," and therefore a "consumer."  She alleges that she downloaded the

WSJ Channel and used it to watch video clips, and her Roku serial number and

viewing history were transmitted to mDialog.  These assertions suffice at this stage

of the case.  See id.  Because the Plaintiff qualifies as a "subscriber," the Court

need not address whether she is a "renter" under the VPPA.

Dow Jones also argues that the dismissal is proper because Plaintiff's anonymous Roku serial number and video viewing histories, without more, are not PII. [Doc. 21-1 at 15-17]. Next, Dow Jones asserts that even if mDialog was able to later tie Plaintiff to her Roku number, it did so by using additional information obtained from other sources, thus, Plaintiff's claim fails because such "after-the-fact" linking is not actionable under the VPPA. [Id. at 19-21]. Plaintiff responds that her Roku serial number can be considered PII, because it is a unique and persistent identifier. [Doc. 24-1 at 17]. Plaintiff claims that the information that Dow Jones provided to mDialog is "akin to" a name and, in support, cites to In re Hulu Privacy Litig., and In re Nickelodeon Consumer Privacy Litig., MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014).

The VPPA prohibits "video tape service provider[s]" from "knowingly" disclosing "personally identifiable information" regarding their consumers. 18 U.S.C. § 2710(b). Pursuant to the VPPA, PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). As Plaintiff correctly points out, a person can be identified by more than just their name and address. "One could not skirt liability under the VPPA, for example, by disclosing a unique identifier and a correlated look-up table. The statute does not require a

name." <u>Hulu</u>, 2014 WL 1724344, at *11. "If Congress wanted to define PII as any information which identifies a person by name or mailing address as having requested or obtained specific video materials, it could have." <u>In re Nickelodeon Consumer Privacy Litigation</u>, 2014 WL 3012873, at *9. But it did not. Accordingly, "a unique anonymized ID could be PII if other evidence renders it the equivalent of identifying a specific person." <u>In re Hulu Privacy Litig.</u>, 2014 WL 1724344, at *11.

A review of the recent decisions in this area leads to conclusion that Plaintiff cannot maintain a VPPA claim against Dow Jones because the Roku serial number, without more, does not constitute PII under the statute. For example, in <u>Hulu</u>, the district court scrutinized three types of disclosures under the VPPA by Hulu[3] to comScore[4] and the social network Facebook. The first involved Hulu's disclosure of its subscribers' unique Hulu ID numbers and their "watch page" URL web addresses containing the video name to comScore. <u>Id.</u> at *9. This potentially allowed comScore to link the Hulu ID to the Hulu user's profile page, and eventually obtain the user's first and last name. <u>Id.</u> The second disclosure entailed Hulu providing comScore with registered users' unique IDs. <u>Id.</u> This information

---

[3] Hulu provided online access to television shows and movies through its website.

[4] "comScore was a metrics company that analyzed Hulu's viewing audience and provided reports that Hulu used to get media content and sell advertising." <u>In re Hulu Privacy Litig.</u>, 2014 WL 1724344, at *1.

allowed comScore to link the identified users and the users' video choices with
information that comScore gathered from other websites that the same user visited.
Id. Finally, Hulu disclosed Hulu's users' Facebook IDs and the video content they
used directly to Facebook. Id.

With regard to the first two disclosures to comScore, the court granted
summary judgment in favor of Hulu. Because no information provided by Hulu to
comScore revealed an identified person and that person's video habits, there was
no violation of the VPPA. Id. at *12. However, concerning the disclosures to
Facebook, the court concluded that the Facebook user ID, even if it was a
nickname, was "more than a unique, anonymous identifier" because it personally
identified a Facebook user. Id. at *14. The court held that there was a material
issue of fact whether the information transmitted to Facebook was sufficient to
identify individual consumers. See id. The court also explained that disclosure to
Facebook was "different than the comScore disclosures," because comScore had
"to tie information together in non-obvious ways." Id. at *15.

In re Nickelodeon Consumer Privacy Litig. is a multi-district class action
case where plaintiffs alleged that Viacom disclosed to Google a wealth of
information, including anonymous usernames, IP addresses, browser settings,
unique device identifiers, operating systems, screen resolutions, browser versions,

and detailed URL requests and video materials requested and obtained from the

Viacom websites (which itself contained users' gender and age, code and the title

of a video). 2014 WL 3012873, at *10. The court noted that "this type of

information might one day serve as the basis of personal identification after some

effort on the part of the recipient, but the same could be said for nearly any type of

personal information." Id. at *11. The court, however, concluded that such

information was not PII, and the VPPA required "a more tangible, immediate

link." Id. It defined PII as "information which *must, without more*, itself link an

actual person to actual video materials." Id. at *10 (emphasis added); see also

Ellis, 2014 WL 5023535, at *3 (adopting the Nickelodeon court's reasoning). The

Nickelodeon court recently re-affirmed this holding. See In re Nickelodeon

Consumer Privacy Litig., MDL No. 2443, 2015 WL 248334, at *5 (D.N.J. Jan. 20,

2015).

This district court adopted the Hulu and Nickelodeon rationale in Ellis, 2014

WL 5023535. There, defendant Cartoon Network, through its mobile software

application ("CN App"), offered video content to consumers. Id. at *1. The CN

App ran on mobile devices, including smartphones with Android operating

systems. Id. Users had to visit the Google Play Store, download the CN App, and

then install it. Id. Each time a consumer accessed the CN App, a complete record

of the user's video history and the user's Android ID, were transmitted to Bango, a data analytics company. Id. Plaintiff alleged that the Android IDs constituted personally identifiable information under the VPPA. Id. In dismissing plaintiff's complaint, the court reasoned that the disclosure "did not violate the VPPA because the third party had to take extra steps to connect the disclosure to an identity," i.e., Bango had to collect information from other sources. Id.

The instant case is indistinguishable from Ellis. Plaintiff claims that Defendant disclosed her Roku serial number and the titles of the videos she watched to a third party, mDialog [Doc. 18 ¶ 2]. Although Plaintiff alleges that using this information mDialog was able to identify her and attribute her video records [id. ¶ 18], she admits that mDialog did so "once equipped with the demographic data linked to a Roku serial number (either by receiving the information from *Roku itself or other sources*)" [id. ¶ 27] (emphasis added). This admission is fatal to Plaintiff's complaint. Just like in Ellis, In re Hulu Privacy Litigation,[5] and In re Nickelodeon Consumer Privacy Litig., third party mDialog had to take further steps, i.e., turn to sources other than Dow Jones, to match the Roku number to Plaintiff. Conversely, Hulu's disclosures of Facebook IDs did not

---

[5] Only with regard to disclosures to comScore.

require Facebook to take any additional steps. See In re Hulu Privacy Litigation, 2014 WL 1724344, at *14.

The Court concludes that Roku serial number, "without more," is not akin to identifying a particular person and, therefore, is not PII. In re Nickelodeon Consumer Privacy Litig., 2014 WL 3012873, at *10. The record does not establish any context or basis for finding that information disclosed by Dow Jones to mDialog identifies specific viewers. Cf. Hulu, 2014 WL 1724344, at *11 ("One could not skirt liability under the VPPA, for example, by disclosing a unique identifier and a correlated look-up table"). Because Plaintiff has not alleged the disclosure of PII, she fails to state a claim under the VPPA. See Iqbal, 556 U.S. at 678.

Because Plaintiff previously has amended her complaint, and any additional amendments would be futile given that the disclosure of the Roku serial number does not qualify as PII under the VPPA, Plaintiff will not be permitted to file any subsequent amendments. See Ellis, 2014 WL 5023535, at *3.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motions to Dismiss Plaintiff's Class Action Complaint [Docs. 14, 15] are **DENIED** as moot. Defendant's Motion to Dismiss Plaintiff's Amended Class Action Complaint [Doc. 21] is **GRANTED**.

Plaintiff's Amended Class Action Complaint is **DISMISSED** with **PREJUDICE** [Doc. 18].

    **IT IS SO ORDERED** this 23rd day of January, 2015.

MARK H. COHEN
United States District Judge