IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TERRY LOCKLEAR, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| *v.* | ) ) | Case No. 1:14-cv-00744-SCJ |
| DOW JONES & COMPANY, INC., | ) ) ) | |
| *Defendant.* | ) ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SANCTIONS</u>**

# TABLE OF CONTENTS

INTRODUCTION................................................................................................1

BACKGROUND ...............................................................................................3

ARGUMENT ....................................................................................................9

I.      Plaintiff's Counsel's Extensive Forensic Investigation Shows
        Defendant's Arguments that the Amended Complaint was Filed
        in Bad Faith to be Baseless..........................................................11

        A.      Plaintiff's Counsel's pre-suit forensic investigation showed
                that Dow Jones's Roku Channel disclosed Roku serial
                numbers and video viewing activity to third party, mDialog........11

        B.      Plaintiff's Counsel's investigation showed that the information
                disclosed by Dow Jones's Channel identified Plaintiff to
                mDialog...........................................................................15

II.     Plaintiff's Counsel's Refusal to Accept Defendant's Conclusory,
        Untested, and Self-Serving Declarations Does Not Make their
        Continued Litigation Vexatious...................................................18

III.    Dow Jones's Motion—Filed Half a Year after the Supposed Conduct
        it Questions—is Untimely under Eleventh Circuit Precedent.................21

CONCLUSION...............................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Battles v. City of Ft. Myers*, 127 F.3d 1298 (11th Cir. 1997) ...................................11

*Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987) ...............................................11

*In re Walker*, 532 F.3d 1304 (11th Cir. 2008) ..........................................................22

*Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co.
    of Fla.*, 827 F.2d 1454 (11th Cir. 1987) .....................................................20, 21

*Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010)......................................................22, 23

*The Lovable Co. v. Honeywell, Inc.*, 431 F.2d 668 (5th Cir. 1970) ..........................21

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252 (11th Cir. 1996) ....................18

**UNITED STATES DISTRICT COURT CASES:**

*Adkins v. Hosp. Auth. Of Houston Cnty.*, No. 04-cv-0080,
    2013 WL 5437636 (M.D. Ga. Sept. 27, 2013) ........................................22, 24

*In re Netflix Privacy Litig.*, No. 11-cv-379 (N.D. Cal. Aug. 12, 2011) ...................17

*In re Taxable Mun. Bond Sec. Litig.*, MDL No. 863,
    1994 WL 34294 (E.D. La. Feb. 3, 1994)......................................................17

*Jelencovich v. Dodge Enterps., Inc.*, No. 09-cv-81045,
    2010 WL 289300 (S.D. Fla. 12, 2010) ....................................................20, 21

*Pinder v. Knorowski*, 660 F. Supp. 2d 726, 737 (E.D. Va. 2009) .....................19, 21

*Tidwell-Williams v. Nw. Georgia Health Sys., Inc.*, No. 97-cv-1726,
    1998 WL 1674745 (N.D. Ga. Nov. 19, 1998) ...............................................21

*Walker v. Hallmark Bank & Trust, LTD.*, No. 09-cv-61978,
    2010 WL 3257993 (S.D. Fla. Aug. 17, 2010)...............................................20

## STATUTES, RULES, AND REGULATIONS:

16 C.F.R. § 312.2 (2013)............................................................................16

28 U.S.C. § 1391........................................................................................17

28 U.S.C. § 1927........................................................................................18

45 C.F.R. 164.514 .....................................................................................16

Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501–06..........................16

Fed. R. Civ. P. 11.................................................................................11, 15

Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d ..............16

Video Privacy Protection Act, 18 U.S.C. § 2710.......................................................2

## INTRODUCTION

Defendant Dow Jones & Co., Inc.'s ("Dow Jones") motion for sanctions (the "Motion") should be denied because it was brought for an improper purpose, is utterly belied by the record, and altogether untimely.

First, the Motion is brought for an improper purpose, namely to create some sort of leverage so as to gain an advantage in parallel settlement negotiations that defendant was initiating. But the case law is clear that neither Rule 11 nor Section 1927 are to be used in such a way.

Second, and not surprisingly given its purpose, the Motion lacks any substantive basis. While Dow Jones tries to paint a picture where Plaintiff and her counsel failed to conduct an adequate investigation into the claims before filing, the reality is that Plaintiff's pre-suit investigation (discussed in great detail below) consisted of an extensive forensic investigation that yielded data giving rise to the facts supporting the claim. With respect to the much-publicized declarations that supposedly exonerate Dow Jones, they were drafted by Dow Jones's counsel, consisted primarily of legal conclusions, and wholly failed to explain *why* or *how* Plaintiff's theory of liability was mistaken. Instead, they completely skirted the issue of whether the Roku identifiers, when received by a company like mDialog, constituted PII. And critically, Dow Jones doesn't even dispute Plaintiff's primary

1

factual allegations—i.e., that through its Roku channel, Dow Jones discloses its users' Roku IDs and video viewing histories to third-party data analytics company mDialog. The Parties just fundamentally disagree about whether those items are the sort  protected from disclosure under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") as being "personally identifiable information" ("PII"). But a dispute over the interpretation of a statute, especially when there exists case law and government agency interpretations that supported Plaintiff's theory of recovery, is not the proper subject of sanctions under either Rule 11 or Section 1927.

Finally, with respect to the timing of the Motion, it couldn't be more untimely. That is, Dow Jones has been threatening sanctions since the start of this case (again at the same time it was pursuing settlement discussions)—serving a draft motion more than *six* months ago—but it didn't choose to pursue them until the Court dismissed the Amended Complaint. As the Eleventh Circuit has made clear, however, in order to be timely, sanctions must be pursued at the earliest opportunity after expiration of the safe harbor period. Here, despite having served it months ago, Dow Jones chose to sit on its Motion to wait and see if the Court was going to rule in its favor on the motion to dismiss and if the case would otherwise settle.

Ultimately, Defendant's Motion is noteworthy for what it doesn't say. That is, it does not deny that it disclosed the information alleged. Nor does it point to any factual allegation that lacked a reasonable foundation. Instead, Defendant's entire Motion focuses on Plaintiff's legal conclusion that the information Defendant disclosed identified her *to the recipient of that information*. Because even Defendant cannot take the position that Plaintiff's legal conclusion—supported by at least two federal agencies, even though ultimately denied by this Court—was "objectively frivolous." Defendant's Motion should be denied in its entirety.

## BACKGROUND

### *A Summary of Plaintiff's Pre-Filing Factual Investigation.*

Prior to filing Plaintiff's original complaint (and as explained in further detail in Section I, *infra*), Plaintiff's counsel at Edelson PC undertook an extensive forensic investigation of Dow Jones's Roku streaming media channel (the "Channel"). (*See* Declaration of Benjamin H. Richman, filed concurrently herewith, ¶¶ 3–8.) That investigation included, *inter alia*, counsel's in-house engineers (i) capturing the incoming and outgoing data transmissions to and from a test Roku device while viewing the Channel, (ii) collecting a representative sample of that data, (iii) identifying any third-party recipients of the data, and (iv)

determining how such data could be used (if at all) by its recipients to identify specific Roku devices or users. (*Id.* ¶ 4.) Relevant here, Plaintiff's engineers ultimately determined that whenever a consumer viewed a video on the Channel, the user's Roku serial number (also known as a "Roku device ID"), along with information identifying the video watched, and the Roku device's IP address, were transmitted to third-party data analytics company mDialog. (*Id.* ¶ 5; Ex. B at 5.)

Further investigation revealed that mDialog's business is specifically focused on what its calls "1 to 1 Stream Addressability"—i.e., "precision targeting to individual viewers during linear, live, and on-demand video." (Compl. ¶ 22, Fig. 4.) In illustrating the "1 to 1 Stream" capability, mDialog's marketing materials claim that while "[t]raditional [l]inear" and "[l]ive [g]eo-[t]argeting" are only able to target individuals at the "local zone" level, mDialog's targeting allows it to *individually identify* consumers at a far more particularized level. (*Id.*, Fig. 3.) Indeed, in those same materials, mDialog identifies the sorts of internet-connected devices through which it can employ its 1-to-1 addressability model, including, *inter alia*, a "smart" (i.e., internet-enabled) television; several video gaming systems, smartphones, and tablet computers; netbook and laptop computers; and, most importantly, *a Roku streaming video player*. (*Id.*)

Based on the information uncovered in their investigation, a review of recent

case law on the VPPA and related agency interpretations, and drawing upon their own extensive experience prosecuting similar VPPA claims and consumer class action cases, Plaintiff's counsel ultimately believed there was a good faith basis to assert a claim against Dow Jones for its violations of the VPPA. (Richman Decl. ¶ 7.) Accordingly, on March 13, 2014, Plaintiff filed her original complaint against Dow Jones. (Dkt. 1.)

### *The Parties' Initial Communications, Meeting and Dow Jones's First Threats of Sanctions*

Shortly after Plaintiff filed her original complaint, counsel for Dow Jones, Ms. Natalie Spears of Dentons US LLP, contacted Plaintiff's counsel and explicitly part of Rule 408 settlement talks argued to them that Plaintiff's allegations were factually inaccurate in many respects. (*Id.* ¶ 9.) Ms. Spears was unwilling to elaborate further at that time, but nevertheless, requested that counsel for the Parties schedule an in-person meeting during which she would do so. (*Id.*) Plaintiff's counsel accepted the invitation for a meeting and further offered to provide Dow Jones and its attorneys their own presentation outlining in detail Plaintiff's pre-suit investigation, the results of that investigation, and their own views of the Parties respective claims and potential defenses. (*Id*. ¶ 9.) Ms. Spears declined that offer, instead maintaining that she believed the Parties should focus (at least for the time-being) on the pleading defects she intended to identify at the

meeting. (*Id.*)

Counsel for the Parties ultimately met at the offices of Edelson PC in Chicago on May 1, 2014. (*Id.* ¶ 11.) Despite what had been forecasted, however, defense counsel couldn't identify any factual allegations in the complaint that were inaccurate and sanctionable, and didn't provide any probative information that called the complaint's allegations into question. (*Id.* ¶ 11.)[1] Instead, it seemed they misunderstood Plaintiff's legal theories because, when pressed, they declined to offer any more specific views about Plaintiff's actual allegations and or the bases of their positions. (*Id.* ¶ 12.) Plaintiff's counsel again offered to present the results of their investigation and explain their theories of the case, but defense counsel again declined and then took the position (quite strangely), that it seemed Plaintiff's counsel was simply unwilling to consider Dow Jones's views of the case. (*Id.* ¶ 13.)[2] Plaintiff's counsel explained that wasn't the case and that they

---

[1]     Notably, defense counsel did not deny that Dow Jones disclosed Roku device IDs and video viewing histories of its Channel users, as Plaintiff alleged. (Richman Decl. ¶ 15.)

[2]     Dow Jones's counsel consistently contends that she has never threatened to pursue sanctions in this case, but instead, has only meant to explain her hope of avoiding such discussions by way of a dismissal of Plaintiff's claims. (*See, e.g.,* February 13, 2015 Letter from Natalie Spears, attached as Exhibit A to the Richman Decl.) In any event, if Dow Jones's and its counsel's intentions were ever unclear in this regard (they were not), the filing of the pending Motion should remove all doubt.

were willing to receive and consider in good faith any probative evidence establishes that they had gotten the facts of the case wrong. (*Id.* ¶ 14.) Following the meeting, defense counsel determined to provide declarations in support Dow Jones's positions.

Dow Jones provided two declarations—one from its own executive, and one from mDialog. (*See* Dkt. 36-2, 36-3; *see also* Section I, *infra*.) Both declarations made the same material point, that mDialog never received "any personally identifying information about Roku users." (*See, e.g.,* Dkt. 36-2, ¶¶ 4–5.) In response, Plaintiff's counsel explained that the declarations didn't change their views of the case because they weren't probative of any of the material issues in the case. (Richman Decl. ¶¶ 17–18.) Primarily, the declarations didn't speak to the material allegations of Plaintiff's complaint—i.e., that users Roku device IDs and were personally identifying to a company like mDialog that uses that data to identify specific Roku users. (*Id.*) Counsel explained further that the declarations were also lacking inasmuch as they didn't dispute any of specific allegations in the complaint, and were inconsistent with mDialog's own public representations about its technical capabilities. (*Id.* ¶ 18.) Nevertheless, and despite that they had no obligation to do so, Plaintiff's counsel suggested that they would be willing to take limited depositions of the declarants to get to the merits of the issue, if Defendant

was intent on pursuing this further. (*Id*. ¶ 19.) But Dow Jones refused. (*Id.*)

**Plaintiff's Amended Complaint and Dow Jones Draft Motion for Sanctions.**

Thereafter, Plaintiff filed her Amended Complaint (dkt. 18), which added further detail from her attorneys' investigation showing *why and how* the information disclosed to mDialog was personally identifying. Shortly thereafter, Defendant served another declaration, this time from a Roku employee, who, like the other declarants, simply concluded that Roku itself hadn't disclosed "PII" (which in his view meant only name, addresses, email address or telephone numbers) to mDialog. (*See* Dkt. 36-4, ¶ 6.) That declaration wasn't informative either, primarily because Plaintiff never made such allegations. (*See generally* Dkt. 18.)

Roughly a month later, Dow Jones served its draft motion for sanctions. (Richman Decl. ¶ 22.) Plaintiff's counsel responded to the motion with a letter, (i) detailing their pre-suit investigation and findings (which, to that date, Dow Jones and its counsel had declined to review), (ii) explaining that it was clear that the only dispute between the Parties was the meaning of the word "identify" as used in the VPPA, because Defendant couldn't point to a single factual allegation that was inaccurate or unsupported, and (iii) confirming that Plaintiff would not withdraw her complaint given that the motion lacked any substantive basis. (*See* August 25,

2014 Letter from Benjamin H. Richman, attached as Exhibit B to the Richman Decl.) But rather than promptly filing its motion for sanctions—as it was required to do if it believed Plaintiff or her counsel had knowingly asserted false allegations or were pursuing her claim in bad faith—Dow Jones replied simply that it believed Plaintiff's allegations were unsupported and that she should not proceed with the case. (*See* September 4, 2014 Letter from Natalie Spears, attached as Exhibit C to the Richman Decl.) It took no further action for the following *six (6) months* until the Court's order granting its motion to dismiss. (*See* Dkt. 31.)

Then, on February 13, 2015, defense counsel contacted Plaintiff's attorneys to explain that Dow Jones intended to proceed with a motion for sanctions, but was open to discussing a "settlement" (i.e., Plaintiff's agreement not to pursue an appeal of the dismissal) in lieu of doing so. (Richman Decl. ¶ 24; *see also* Ex. C.) Plaintiff's counsel noted that it was improper to tie the threat of sanctions to settlement and therefore, suggested that if Dow Jones was truly interested in resolving the case, then it should provide a written settlement proposal. (Richman Decl. ¶ 25.) It never did so.

Two days after Plaintiff filed her notice of appeal, *eight months* after Plaintiff filed her Amended Complaint, and six months after first serving its draft motion for sanctions, Dow Jones filed its pending Motion.

## ARGUMENT

Dow Jones makes two primary arguments in support of its Motion. First, it contends that Plaintiff's counsel acted in bad faith by failing to perform a reasonable investigation prior to filing the Amended Complaint. Second, it claims that Plaintiff's counsel acted vexatiously by refusing to dismiss Plaintiff's case upon receipt of the declarations from Dow Jones. Neither argument withstands scrutiny.

Plaintiff's Counsel performed an extensive forensic analysis that confirmed Dow Jones's Roku Channel disclosed information about users' video viewing habits to third-party mDialog, and that the information disclosed identified those users to mDialog, consistent with mDialog's own public representations. Those facts gave rise to a good-faith basis for asserting a claim for Dow Jones's violations of the VPPA. Indeed, Dow Jones has never (in the declarations it supplied) presented any evidence to refute Plaintiff's fundamental factual allegations. And although Plaintiff's theory of what constitutes PII under the VPPA was untested and an issue of first impression, it was nevertheless supported by her counsel's investigation, precedent in other contexts, agency interpretations of what constitutes PII, and mDialog's own public representations about its ability to identify specific individuals using such information.

As such, Plaintiff and her counsel had a more than reasonable basis for filing the Amended Complaint, and Defendant's request for sanctions must be denied.

## I.      Plaintiff's Counsel's Extensive Forensic Investigation Shows Defendant's Arguments that the Amended Complaint was Filed in Bad Faith to be Baseless.

Federal Rule 11(b)(3) requires an attorney who files a pleading, motion, or other paper to "certif[y] that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). "'Reasonableness under the circumstances' is the test to be applied to determine whether an attorney has violated Rule 11. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). Factors to be considered include the time available for investigation, whether the attorney had to rely on information from a client, and the general plausibility of legal arguments. *Id.* (citation omitted)." *Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997). Here, Plaintiff's Counsel's investigation was extensive, and the resulting conclusions well-founded.

### A.      Plaintiff's Counsel's pre-suit forensic investigation showed that Dow Jones's Roku Channel disclosed Roku serial numbers and video viewing activity to third party, mDialog.

As detailed in Plaintiff's August 25th response to Defendant's draft sanctions motion (*see* Ex. B), Plaintiff's counsel performed a detailed forensic

11

investigation that well exceeded Rule 11's requirements. That investigation began by performing an analysis of the transmissions to and from a Roku device while viewing Defendant's Roku Channel. (Richman Decl. ¶¶ 3–7.) Using packet-capture technology,[3] the data was collected and examined to identify any third-party recipients of information from the Channel. (*Id.* ¶ 4; Ex. B at 2–3.) That analysis demonstrated that viewing a video on the Channel caused the data shown in Figure 1 below—known as a query string—to be sent to "wsj.pixel.mdialog.com," which is a server owned by mDialog. (Ex. B at 2–3.)

```
GET /imp/pixel.gif?device=Roku%204200X&video_asset_key=9BC7CB3D-33F1-4518-
B417-4658F99B4E76&sdk_version=1.2.6&video_id=47074&campaign_id=-1&account=wsj&session_id=1GJ37P1601
098419&network=wifi&video_asset_type=on-
demand&os_name=Roku&application_key=0747deacc0faa7033164617ac9d8f2c0&device_unique_identifier=1GJ37
P160109&os_version=045.03E04016A&vap_id=-1&rnd=819070&ad_sequence=1&show_id=19&episode_id=47272&adp
od_sequence=1 HTTP/1.1
User-Agent: Roku/DVP-5.3 (045.03E04016A)
Host: wsj.pixel.mdialog.com
Accept: */*
```

(Ex. B, at 2, Fig. 1.)

As demonstrated by Figure 1, the information Dow Jones disclosed to mDialog included: (a) a "device_unique_identifier," which is the serial number of the Roku device in question, and (b) the "video_asset_key," which is the numerical identifier of the video watched (in that example, the "Ukraine Declares Former President a Fugitive" video"). (Ex. B at 2–3.) Importantly, publicly accessible

---

[3]     A "packet" consists of a single grouping of data transmitted via computer network. A software library can be used to capture and store inbound and outbound packets to a file, which can then be inspected using network analysis software.

information on the Wall Street Journal website ties the video_asset_key to a specific video title. (*Id.*)

After the Channel sent the information identified in Figure 1 to mDialog's servers, mDialog then sent a confirmatory response, verifying that it received the Channel's transmission as well as the IP address of the Roku device that sent the transmission. (*Id.* at 4, Fig. 4.) mDialog's server response also showed that it used an Apache web server and an associated add-on module known as Phusion_Passenger, giving it the default capacity to quickly parse query strings (like those sent by the Channel), log the public IP address associated with each transmission received, and persistently store data received by the server. (*Id.* at 4–5.) Taken together, this indicates that mDialog houses, *at a minimum*, the Roku serial number and IP address associated with *each* video watched on the Channel. (*Id.*)

Having identified the information disclosed to mDialog (including IP address, Roku serial number, and video identifier), Plaintiff's investigation turned to mDialog, and an analysis of what it can do with that information. According to mDialog's marketing, it is a data analytics and video advertising company whose products enable content providers like Dow Jones to "[d]ynamically deliver and measure uniquely addressable advertising within linear, live and video on-demand

13

programming . . . ." (Dkt. 18, ¶ 14 n.2.) In the modern online analytics and advertising industries, companies identify and profile individual consumers using "persistent identifiers" associated with consumers' web-browsing devices, such as the serial number associated with each Roku device. (*Id.* ¶¶ 16–18.) Once an analytics or advertising company recognizes a persistent identifier, it can track an individual's web activity using that identifier or any other information known to be linked to it, such as an IP address. (*Id.* ¶ 21; Ex. B at 5.) In essence, online advertising and analytics companies use persistent identifiers such as Roku serial numbers and IP addresses in the same way that traditional direct-mail marketing companies used names and mailing addresses.

Plaintiff's investigation confirmed that mDialog conforms to this paradigm. For instance, mDialog's marketing materials boast of its "1 to 1 Stream Addressability," which it describes as "precision targeting to individual viewers during linear, live, and on-demand video." (Compl. ¶ 22, Fig. 4.) In illustrating the "1 to 1 Stream" capability, those same materials show that while "[t]raditional [l]inear" and "[l]ive [g]eo-[t]argeting" are only able to target individuals at the "local zone" level, mDialog's targeting allows it to individually identify consumers at a level more particularized than "addressable." (*Id.*, Fig. 3.)

Nor is this capacity advertised in the abstract. In that same figure, mDialog

shows a variety of internet-connected devices through which it can employ 1-to-1

addressability, including, *inter alia*, a "smart" (i.e., internet-enabled) television;

several video gaming systems, smartphones, and tablet computers; netbook and

laptop computers; and, most importantly, *a Roku streaming video player*. (*Id.*)[4]

**B.    Plaintiff's Counsel's investigation showed that the information disclosed by Dow Jones's Channel identified Plaintiff to mDialog.**

The facts revealed in the above investigation—namely, that mDialog

received users' Roku serial numbers, IP addresses, and video viewing

information—gave Plaintiff's counsel a more than reasonable basis for asserting

and pursuing Plaintiff's (admittedly novel) VPPA claim in the Amended

Complaint. Dow Jones disagrees, and essentially asks the Court to sanction

Plaintiff's counsel for pursuing a case of first impression regarding an emerging

technology.

To state a VPPA claim, a plaintiff must allege the disclosure of information

that identifies him or her as having viewed specific individuals. 18 U.S.C.

§ 2710(b)(1). While it is generally accepted that "a person can be identified by

more than just their name and address," (Dkt. 31 at 9), there is no controlling

---

[4]    The Roku device is the black rectangular device with the purple label in the lower, right corner of Figure 4. *See* http://blog.roku.com/wp-content/uploads/2014/05/Roku-front-w-remote.jpg for an image of an identical device.

authority—in this Circuit or any other—defining the word "identifies" within the VPPA, or determining if and when a persistent device identifier is "identifying." At the time Plaintiff filed her Amended Complaint, however, several sources of guidance suggested that device identifiers and IP addresses are "identifying," at least within these circumstances (i.e., when disclosed to an online analytics and advertising company that advertises its ability to target specific Roku users on a "1-to-1" basis).

For instance, numerous government agencies take the position that the exact type of information disclosed by Dow Jones is personally identifying. For example, in the regulations implementing the Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501–06, the Federal Trade Commission concluded that a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services"—such as "a customer number held in a cookie, **an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier**"—is considered "*individually identifiable* information about an individual collected online." 16 C.F.R. § 312.2 (2013) (emphasis added). Likewise, the Department of Health and Human Services regulations implementing the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d, recognize "device identifiers and serial numbers" and "IP addresses" as protected types of

16

"direct identifier." 45 C.F.R. § 164.514(e)(2).

Given those regulatory pronouncements, along with numerous technical publications,[5] Plaintiff's counsel plainly had a good faith basis for alleging that Dow Jones disclosed information that identified Plaintiff as having viewed particular videos, regardless of the fact that the Court ultimately granted Defendant's Rule 12 motion.[6] And, as described below, the information provided to Plaintiff's counsel by Defendant in no way undermined those conclusions.

---

[5]   *See*, *e.g.*, *Handbook for Safeguarding Sensitive Personally Identifiable Information* at 5, Dep't of Homeland Sec. (Mar. 2012), *available at* http://www.dhs.gov/sites/default/files/publications/Guidance/handbookforsafeguardingsensitivePII_march_2012_webversion.pdf; *Rules and Regulations–Protecting PII–the Privacy Act*, GSA.gov, http://www.gsa.gov/portal/content/104256 (last accessed Mar. 6, 2015).

[6]   Defendant asserts that Plaintiff's bad faith is shown by the fact that Plaintiff's counsel has represented plaintiffs in similar VPPA actions around the country. (Def. Mot. at 17 n.6.) Specifically, Defendant notes that "forum-shopping can be 'indicative of bad faith and improper motive.'" (*Id.* (quoting *In re Taxable Mun. Bond Sec. Litig.*, MDL No. 863, 1994 WL 34924, at *9 (E.D. La. Feb. 3, 1994).) That argument, however, fails to withstand even minimal scrutiny, for at least two reasons. First, there is simply no prohibition on a single law firm acting as counsel in a number of factually and legally similar cases, and, in fact, Plaintiff's counsel at Edelson PC have been commended by the courts for their extensive expertise in consumer privacy litigation. *See*, *e.g.*, *In re Netflix Privacy Litig.*, No. 11-cv-379, Dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (appointing Edelson attorneys sole lead counsel in VPPA class action due, in part, to firm's "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]"). And second, to the extent Dow Jones is saying that Plaintiff's counsel should have filed all of the above-mentioned cases in this Court, Dow Jones ignores the restrictions on venue imposed by 28 U.S.C. § 1391.

## II. Plaintiff's Counsel's Refusal to Accept Defendant's Conclusory, Untested, and Self-Serving Declarations Does Not Make their Continued Litigation Vexatious.

In addition to its misplaced contention that Plaintiff's counsel failed to perform the requisite pre-suit investigation, Defendant asserts that by failing to accept its conclusory declarations as truth, Plaintiff's counsel vexatiously prolonged the proceedings by filing the Amended Complaint with a reckless disregard for known facts. That argument altogether lacks merit as well. For Rule 11 sanctions to be appropriate, a claim or assertion must first be objectively frivolous. *See Worldwide Primates, Inc.*, 87 F.3d 1252, 1254 (11th Cir. 1996) ("In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, *if they are*, whether the person who signed the pleadings should have been aware that they were frivolous.") (emphasis added). Likewise, sanctions under 28 U.S.C. § 1927 are only warranted where an attorney "so multiplies the proceedings in [a] case unreasonably and vexatiously." § 1927. That's just not the case here and the declaration Dow Jones provided do nothing to change that.

For instance, the declaration of mDialog's Chief Technology Officer asserts that mDialog "does not receive Roku users' names or any personally identifying

18

information about Roku users," that "mDialog does not now possess, nor has it possessed, Roku users' identities, or information that would allow mDialog to link any specific person to a Roku device number," and that "mDialog has no information about Terry Locklear other than from her Complaint . . . ." (Dkt. 36-2 at ¶¶ 4–6.)[7] Likewise, the declaration from Dow Jones's Executive Director of Production Operations uses the same language with respect to information possessed by Dow Jones. (Dkt. 36-3 at ¶¶ 5–6.) Finally, Dow Jones offered the declaration of Roku's Chief Security Architect. However, his declaration stands for little more than his claim that Roku has not provided mDialog or Dow Jones with users' names, addresses, email addresses, or telephone numbers. (Dkt. 36-4 at ¶ 6.)

But these assertions simply skirt the issue. They do nothing to explain *why* the information mDialog actually received—i.e., Roku device IDs, IP addresses, and video viewing histories—is not "identifying," or "link[ed to a] specific person," much less do they refute the numerous government sources supporting Plaintiff's position. (*See* Section I, *supra*.) The declarations also notably fail to (i)

---

[7]    Not coincidentally, paragraph 5 in the Patel and Webster Declarations are substantially similar, and paragraph 6 of the two declarations are *identical* with the exception of employer names. (*Compare* Dkt. 36-2 at ¶¶ 5–6 *and* Dkt. 36-3 at ¶¶ 5–6.) Given that Defendant's counsel apparently drafted the Patel Declaration while refusing to allow Plaintiff to test its veracity, it is entitled to no weight. *See Pinder v. Knorowski*, 660 F. Supp. 2d 726, 737 (E.D. Va. 2009).

dispute that mDialog received the Roku serial number and video activity of each user of the Dow Jones Roku Channel; (ii) dispute that mDialog's servers were programmed to link video activity with Roku serial number, and to persistently store that information; or (iii): state what information mDialog *does* associate with Roku serial numbers and video activity.

Ultimately, the declarations simply took the legal position that what was disclosed to mDialog is not PII as that term is used in the VPPA. But, "disagreement with Plaintiff's legal theory alone cannot form a basis for sanctions under . . . Rule 11 . . . , particularly where there is a lack of developed case law with respect to the particular theory." *Walker v. Hallmark Bank & Trust, LTD.*, No. 09-cv-61978, 2010 WL 3257993, at *5 (S.D. Fla. Aug. 17, 2010) (internal quotations and citations omitted); *see also Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Fla.*, 827 F.2d 1454, 1458 (11th Cir. 1987) ("Rule 11 is intended to deter frivolous suits, not to deter novel legal arguments or cases of first impression."). That is true even where, as here, a court ultimately rejects the plaintiff's claim.[8] *See Jelencovich v. Dodge Enterps., Inc.*,

---

[8]     To be clear, this Court didn't actually reject Plaintiff's legal theory, but rather, held that Plaintiff had not pled enough facts to support it. (*See* Dkt. 31 at 14 ("The record does not establish any context or basis for finding that information disclosed by Dow Jones to mDialog identifies specific viewers.").)

No. 09-cv-81045, 2010 WL 289300, at *1 (S.D. Fla. Jan. 12, 2010) ("While the Court ultimately disagreed with Plaintiff's legal theory, this alone cannot form a basis for sanctions under . . . Rule 11 . . . particularly where there is a lack of developed case law with respect to the particular theory.") (citing *Laborers Local 938*, 827 F.3d at 1458).

Beyond that, Plaintiff was not required to simply accept Defendant's self-serving and untested declarations as truth. *See*, *e.g.*, *Tidwell-Williams v. Nw. Georgia Health Sys., Inc.*, No. 97-cv-1726, 1998 WL 1674745, at *6 (N.D. Ga. Nov. 19, 1998) (holding that "it is well settled that self-serving conclusory affidavits" without factual support in the record are not a basis for dismissal or judgment); *The Lovable Co. v. Honeywell, Inc.*, 431 F.2d 668, 674 (5th Cir. 1970) (holding that affidavit setting forth legal conclusions cannot be treated as support for party's position). Indeed, if that were the case then no claim would ever proceed beyond the pleadings—every defendant could simply provide a self-serving declaration and obtain a dismissal. *See Pinder*, 660 F. Supp. 2d at 737 (noting that it "would make little sense" to "take [Defendant's] 'untested, self-serving assertions' as true and use them to dismiss Plaintiff's claim"). Nevertheless, Plaintiff's counsel didn't simply reject the contentions raised in Dow Jones's declarations here; instead, they offered to take limited depositions of the

21

declarants to better understand their testimony and the effect (if any) it had on the substance of Plaintiff's claim. They can hardly be faulted that Dow Jones refused to engage in that regard.

### III. Dow Jones's Motion—Filed Half a Year after the Supposed Conduct it Questions—is Untimely under Eleventh Circuit Precedent.

Dow Jones's Motion fails for the additional reason that it is incredibly untimely. Rather than filing the Motion promptly after Rule 11's safe-harbor period ran in August of last year, Dow Jones instead chose to sit on the motion in hopes the Court would agree with its legal theory. That delay was improper and the Motion could be denied on this basis alone.

Although "there is no time limit set forth in the text of Rule 11, the Eleventh Circuit has interpreted the safe harbor provision as requiring a motion for Rule 11 sanctions to be served *and filed* 'prior to final judgment or judicial rejection of the offending motion.'" *Adkins v. Hosp. Auth. Of Houston Cnty.*, No. 04-cv-0080, 2013 WL 5437636, at *3–4 (M.D. Ga. Sept. 27, 2013) (quoting *In re Walker*, 532 F.3d 1304, 1308 (11th Cir. 2008)) (quotations from record omitted) (emphasis added); *see also Peer v. Lewis*, 606 F.3d 1306, 1312–13 (11th Cir. 2010) (affirming denial of motion for sanctions "filed . . . thirteen days after the district court struck [the respondent's] complaint . . . because the district court had already rejected the offensive pleading at the time [the movant] moved for sanctions."). Likewise, for

sanctions pursuant to the Court's inherent authority, "where sanctionable conduct occurs and is discovered before final judgment, a motion for sanctions pursuant to the court's inherent power must be filed before entry of the court's final order." *Peer*, 606 F.3d at 1315 n.10.

Here, Dow Jones asserts that Plaintiff's Amended Complaint lacked any good-faith foundation. The Amended Complaint was filed on June 2, 2014, (Dkt. 18), and Defendant served Plaintiff's counsel with a copy of its draft sanctions motion just over two months later, on August 4, 2014, (Def. Mot. at 11.) Rather than filing its motion promptly upon the completion of the 21-day safe harbor period, however, Defendant waited *more than half a year* before filing. During that time it was Defendant that multiplied the proceedings by moving to dismiss the Amended Complaint under Federal Rule 12, which necessitated full briefing, a ruling by the Court, and Plaintiff's pending appeal. (*See* Dkts. 21, 24, 26, 31, 33.) And, while Dow Jones argues that its delay resulted from "an effort to avoid clouding the issues before the court on the Motion to Dismiss," (Def. Mot. at 11 n.3), it cannot honestly believe that the Court would have been incapable of separating the issues in the Rule 11 Motion from those in the motion to dismiss, or determining for itself whether to take up the Rule 11 Motion prior to briefing on the request for dismissal.

Given that, it's clear that Dow Jones's true motivation for filing now (and, indeed for its entire treatment of the sanctions motion) seems to be leverage. That is, after Plaintiff filed her original complaint, Dow Jones threatened sanctions. Once it realized that Plaintiff would not bow to those threats, it waited. (Richman Decl. ¶¶ 14) Then, once Plaintiff filed her Amended Complaint, Dow Jones threatened sanctions. (*Id*. ¶ 22.) And, again, when Plaintiff proceeded, Dow Jones decided to wait. (*Id*. ¶ 23.) Now that a judgment has been entered in its favor, it seems an opportunity, and has decided to use the Motion as leverage so as to gain an advantage in parallel settlement negotiations that it initiated. (*Id*. ¶¶ 24–25.)

In the end, if Dow Jones truly believed that Plaintiff's Amended Complaint was improper, it had a duty to file its motion, rather than delaying until it believed it was in the best strategic position to move forward. Because it waited over eight months from the filing of the Complaint at issue, Dow Jones's "[m]otion was . . . clearly filed outside of the time contemplated by Rule 11." *Adkins*, 2013 WL 5437636, at *4.

## CONCLUSION

For the reasons stated above, Plaintiff Terry Locklear, individually and on behalf of all others similarly situated, respectfully requests that this Honorable Court deny Dow Jones's Motion for Sanctions and award such other relief as it

deems necessary, reasonable, and just.

Respectfully submitted,

**Terry Locklear**, individually and on behalf of all others similarly situated,

Dated: March 6, 2015                    By: s/ Benjamin H. Richman
                                             One of Plaintiff's Attorneys

Jay Edelson (*pro hac vice*)
jedelson@edelson.com
Benjamin H. Richman (*pro hac vice*)
brichman@edelson.com
J. Dominick Larry (*pro hac vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378

Jennifer Auer Jordan
Georgia Bar No. 027857
jennifer@thejordanfirm.com
THE JORDAN FIRM, LLC
1447 Peachtree Street, N.E., Suite 880
Atlanta, GA 30309
Tel: 404.445.8400
Fax: 404.445.8477

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiff certifies

that the pleading has been prepared in Times New Roman, 14-point type, which is

of the font selections approved by the Court in Local Rule 5.1(B).

s/ Benjamin H. Richman

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 6, 2015, I electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ J. Dominick Larry