IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TERRY LOCKLEAR, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| *v.* | ) ) | Case No. 1:14-cv-00744-SCJ |
| DOW JONES & COMPANY, INC., | ) ) ) ) | |
| *Defendant.* | ) ) | |

**DECLARATION OF BENJAMIN H. RICHMAN IN SUPPORT OF
PLAINTIFF'S REPONSE IN OPPOSITION
<u>TO DEFENDANT'S MOTION FOR SANCTIONS</u>**

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1. I am over the age of eighteen and I am fully competent to make this declaration. This declaration is based upon my personal knowledge unless otherwise indicated. If called upon to testify to the matters stated herein, I could and would do so competently.

2. I am a partner at the law firm of Edelson PC, which has been retained to represent the named Plaintiff in this matter, Terry Locklear ("Plaintiff" or "Locklear").

1

*Plaintiff's Counsel's Extensive Pre-Suit Investigation*

3. Prior to filing Plaintiff's initial complaint, Plaintiff's counsel, including several attorneys and an in-house engineers, performed an extensive investigation of the network traffic to and from the Roku streaming-media device while using Dow Jones's Roku Channel (the "Channel"). (*See* Exhibit B hereto.)

4. The investigation (i) utilized packet capture software to identify the incoming and outgoing data transmissions to and from a test Roku device while viewing the Channel, (ii) collected a representative sample of that data, (iii) identified third-party recipients of that data, and (iv) determined how such data could be used (if at all) by its recipients to identify specific Roku devices or users.

5. The investigation revealed that whenever a user viewed a video on the Channel, the user's Roku serial number (also known as a "Roku device ID"), along with information identifying the video being watched, was transmitted to third-party analytics and advertising company mDialog. (*See* Ex. B.)

6. From there, the investigation turned to mDialog, and its ability to identify individuals using the information collected from the Channel, and specifically its own representations regarding its ability to identify and target individual Roku users. (*See*, *e.g.*, Dkt. 1, ¶ 19.)

7. Based on the information uncovered in our investigation, and a review

of recent VPPA case law and agency interpretations, and drawing on our firm's extensive experience prosecuting similar VPPA claims and consumer class actions, we ultimately believed there was a good faith basis for asserting a claim on behalf of Plaintiff and the putative class against Dow Jones for violating the VPPA.

8. Accordingly, on March 13, 2014, Plaintiff filed her original complaint against Dow Jones. (Dkt. 1.)

***Defense Counsel's Repeated Threats of Sanctions, and Refusal to Discuss Plaintiff's Investigation***

9. Following the filing of Plaintiff's original complaint, Natalie Spears of Dentons US LLP, counsel for Defendant, contacted me by telephone and, explicitly under the guise of Rule 408 settlement discussions, argued that Plaintiff's allegations were factually inaccurate in many respects. Ms. Spears refused to elaborate further at that time, but nevertheless requested that counsel for the parties schedule an in-person meeting during which she would do so.

10. I accepted Ms. Spears' invitation to meet, and also offered to provide our own presentation, outlining our pre-suit investigation in detail, as well as our views of the parties' respective claims and potential defenses. Ms. Spears refused that offer, and instead maintained that she believed the parties should focus on the supposed pleading defects she intended to identify at the meeting.

11. On May 1st, 2014, Ms. Spears, along with her co-counsel Anthony

3

Eliseuson, also of the Dentons firm, came to my firm's Chicago office for an in-person meeting. Despite what Ms. Spears's had promised, however, neither she nor Mr. Eliseuson could point to any factual allegations in Plaintiff's original complaint that they believed to be inaccurate and sanctionable, and didn't provide any probative information that called the complaint's allegations into question.

12. Instead, it seemed Defendant's counsel misunderstood Plaintiff's legal theories because when pressed, they declined to offer any more specific views about Plaintiff's actual allegations and/or the bases of their positions.

13. At that point, my colleagues and I again offered to present the results of our firm's investigation, and to further explain our theories of the case. Ms. Spears and Mr. Eliseuson again declined and then took the position (quite strangely) that it seemed my colleagues and I were simply not interested in understanding Dow Jones's views of the case. At that point, Ms. Spears also raised the possibility of Rule 11 sanctions for the first time, stating that she hoped to avoid the need to file such a motion by convincing us to withdraw Plaintiff's complaint.

14. In response, my colleagues and I explained that it simply wasn't the case that we were unwilling to consider Defendant's views, and that we were willing to receive and consider in good faith any probative evidence establishing

that we were mistaken regarding the relevant facts of the case.

15. Notably, at no point during the meeting did Defendant's counsel deny that the Channel disclosed Roku IDs and video viewing histories of its users, as Plaintiff alleged.

16. Following the May 1st meeting, Dow Jones apparently determined to provide us with two declarations—one from one of its own executives, and another from mDialog—in an apparent attempt to convince us that we had the facts of the case wrong.

17. Those declarations, however, were each only six paragraphs and were unconvincing. Specifically, and as I explained to Ms. Spears in emails dated May 29, 2014 and June 4, 2014, the declarations didn't speak to the material allegations of Plaintiff's complaint—i.e., that users' Roku device IDs were personally identifying to a company like mDialog that is in the business of identifying consumers with such information.

18. I also explained that the declarations failed to dispute any of the specific factual allegations in the complaint, and were inconsistent with mDialog's own public representations about its technical capabilities.

19. Given those issues with the declarations, as well as the questions they raised (e.g., what the declarants considered to be "personally identifiable

information," and what information mDialog did maintain in association with specific Roku IDs), I suggested that we would be willing to proceed with depositions of the declarants—limited in scope to the issues raised by the declarations—in an effort to get to the merits of the issue. Despite our repeated offers to dismiss if Dow Jones could establish that the information disclosed was not in fact identifying, it refused to allow the limited depositions, or any other two-way exchange of information.

20. After that exchange, Plaintiff filed her Amended Complaint (dkt. 18), providing additional detail from my firm's investigation regarding why and how the information disclosed from the Channel was identifying.

21. Shortly thereafter, Defendant provided another declaration, this time from a Roku employee. (*See* Dkt. 36-4.) That declaration, similar to the others, simply concluded that Roku itself hadn't disclosed "PII" (which in the declarant's view meant names, addresses, email addresses, and telephone numbers). But because Plaintiff had never alleged that Roku disclosed that information, the Roku declaration was not informative on any of the relevant issues in this case.

22. Over a month later, Dow Jones served my firm with its Rule 11 letter and draft sanctions motion. We responded by letter dated August 25, 2014, which (i) detailed our pre-suit investigation and findings (which Dow Jones had refused

to receive), (ii) explained that Defendant's draft motion made clear that the only real dispute among the parties was regarding the meaning and scope of the word "identify" as used in the VPPA, given that Defendant hadn't identified a single factual allegation in the pleadings that was inaccurate or unsupported, and (iii) confirmed that Plaintiff would not withdraw her Amended Complaint given that the motion lacked any substantive basis.

*Defendant's Use of its Sanctions Motion to Gain Settlement Leverage*

23. Rather than promptly filing its motion for sanctions, however, Dow Jones replied simply that it believed Plaintiff's allegations were unsupported and that she should not proceed with her case.

24. Following the Court's order granting Defendant's motion to dismiss, and after doing nothing with its sanctions motion for six months, on February 13, 2014, Ms. Spears called me to explain that Dow Jones was interested in discussing a potential resolution of the case prior to any appeal, and also represented that Dow Jones intended to proceed with its motion for sanctions the following week.

25. In response, I noted that it was improper to tie the threat of sanctions to settlement negotiations, and I therefore suggested that if Dow Jones was truly interested in resolving the case that it should provide a written settlement proposal. But Dow Jones never did so.

*Exhibits Hereto*

26. Attached hereto as Exhibit A is a true and accurate copy of a letter dated February 13, 2015, from Natalie J. Spears, counsel for Defendant, to me.

27. Attached hereto as Exhibit B is a true and accurate copy of a letter dated August 25, 2014, from myself to Natalie J. Spears, responding to Defendant's sanctions letter and draft motion.

28. Attached hereto as Exhibit C is a true and accurate copy of a letter dated September 4, 2014.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of March, 2015, at Chicago, Illinois.

                                        s/ Benjamin H. Richman

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2015, I electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/_____